## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

**LEAGUE OF WOMEN VOTERS OF OHIO, et al.** :
                               :

              Plaintiffs,           :   Case No. 20CV003843
                                 :

                   v.               :   Judge Michael Watson
                                 :

**OHIO SECRETARY OF STATE FRANK LAROSE,** :
                                 :

              Defendant.       : 

---

## DECLARATION OF AMANDA M. GRANDJEAN

---

I, Amanda M. Grandjean, hereby state that I am over the age of eighteen years and am competent to testify to the following on the basis of personal, firsthand knowledge:

1. From September 2016 to January 2019, I was an associate attorney with the law firm of Bricker and Eckler, LLP, and focused my practice of law on the areas of government relations, election law, campaign finance, and litigation.

2. In January 2019, I was appointed by Secretary of State Frank LaRose to the position of Deputy Assistant Secretary of State and State Elections Director in the Elections Division of the Ohio Secretary of State's Office, where I am responsible for developing and implementing policies, procedures, and guidelines for the administration of federal, state, and local elections to assist county boards of elections in the fulfillment of their statutory duties, as well as having oversight of the statewide voter registration database ("SWVRD"), the receipt, review, and distribution of statewide candidate and issue petition filings, and campaign finance regulations and related filings.

3. I am a member of the National Association of State Election Directors, the National Association of Secretaries of State, the United States Election Assistance Commission Standards Board, the Bipartisan Policy Center Elections Task Force, the MIT Election Data Science Lab, and an executive board member of the Electronic Registration Information Center.

4. Based on my professional background and my responsibilities at the Secretary of State's Office, my review of prior Directives of this office, and what I have come to know since starting this position in 2019, and discussions with all of the 88 county boards of elections since I started in my position, I have first-hand knowledge of the responsibilities and tasks required of the eighty-eight county boards of elections and the Secretary of State's Office in conducting absentee voting.

   Exhibit B, Declaration of Amanda Grandjean

5. With limited exceptions not relevant here, to receive an absentee ballot by mail, an elector must submit an application for an absentee ballot to the elector's county board of elections not later than noon the Saturday before Election Day. An elector may submit an application as early as January 1st of the year of the election or ninety days prior to the election if the elector is requesting a ballot for a Presidential Primary Election. Ohio Rev. Code § 3509.03.

6. Though the Secretary of State prescribes a form for an absentee ballot application, an elector may apply for an absentee ballot in any form, even a blank piece of paper, as long as the application contains each the following pieces of information:

      a. The voter's name.
      b. The voter's signature.
      c. The address at which the voter is registered to vote.
      d. The voter's date of birth.
      e. The voter's identification, in one of the following forms:
            1. The voter's driver license number,
            2. The last four digits of the voter's Social Security number, or
            3. A copy of a current and valid photo identification, a military identification, or a current (within the last 12 months) utility bill, bank statement, government check, paycheck, or other government document (other than a notice of voter registration mailed by a board of elections) that shows the voter's name and address.
      f. A statement identifying the election for which the absentee ballot is requested.
      g. A statement that the person requesting the ballot is a qualified elector.
      h. If the request is for a primary election ballot, the voter's party affiliation.
      i. If the voter desires a ballot to be mailed to the elector, the address to which that ballot shall be mailed.

Ohio Rev. Code § 3509.03.

7. Pursuant to Ohio Rev. Code § 3501.011(A), "whenever a person is required to sign or affix a signature . . . on any other document that is filed with or transmitted to a board of elections . . . , 'sign' or 'signature' means that person's written, cursive-style legal mark written in that person's own hand." However, Ohio Rev. Code § 3501.011(B) provides that "[f]or persons who do not use a cursive-style legal mark during the course of their regular business and legal affairs, 'sign' or 'signature' means that person's other legal mark that the person uses during the course of that person's regular business and legal affairs that is written in the person's own hand."

8. The signature or legal mark of a registered elector is "the mark of that elector as it appears on the elector's voter registration record." Ohio Rev. Code § 3501.011(C).

Exhibit B, Declaration of Amanda Grandjean

9. An elector with a disability may personally affix their signature through the use of a reasonable accommodation, including the use of assistive technology or an augmentative device such as a signature stamp. *See* Ohio Rev. Code §§ 3501.011 and 3501.382(F).

10. An application for an absentee ballot in the form prescribed by the Secretary of State is available on the Secretary of State's website as a fillable PDF or at any county board of elections' office.

11. An elector may call the Secretary of State and request to receive an application by mail. An elector also may visit the Secretary of State's website to request an application. Secretary of State Directive 2020-18, attached hereto as Exhibit A.

12. Alternatively, an elector may contact the county board of elections to request an application.

13. A completed application for an absentee ballot can be returned by mail or in person to the board of elections' office.

14. County boards of elections are required to have a secure receptacle, commonly called a "drop box," outside of their office that may be used for the contactless return of applications for absentee ballots, absentee ballots, and Forms 11-S. Electors have access to the drop box twenty-four hours a day, seven days a week. The contents of the drop box are retrieved by a bipartisan team of election officials at least once per day. The drop box allows electors to return documents and an absentee ballot to the board without entering the board of elections' office. Secretary of State Directive 2020-16, attached hereto as Exhibit B.

15. For the upcoming November 3, 2020 Presidential General Election, the Secretary of State mailed a personalized absentee ballot application to every registered elector in Ohio. Secretary of State Directive 2020-13, attached hereto as Exhibit C.

16. In order to receive an absentee ballot using the personalized application, the elector simply needs to sign it, provide an acceptable form of identification and date of birth, and return it (by mail or in person) to their county board of elections in the enclosed, self-addressed envelope. *Id.*

17. After receiving the elector's application, board of elections' staff must review the information provided in the application to make certain that all of the information required by Ohio Rev. Code § 3509.03 has been provided by the elector. Board staff also must compare the elector's signature on the application with the elector's signature on file with the board as a final check to ensure that the elector who is requesting the ballot is the elector who registered to vote with the board.

18. If an application for an absentee ballot is complete, the board of elections mails the following to the voter: an absentee ballot for the voter's precinct; absentee ballot instructions; a return mailing envelope; and an identification envelope. Boards of elections

Exhibit B, Declaration of Amanda Grandjean

must pre-print the voter's name and address (at which the voter is registered to vote) on the voter's identification envelope prior mailing it to the voter. The absentee ballot instructions advise the voter how to mark the ballot, complete the identification envelope, affix appropriate postage and a post mark (if the voter opts to return the ballot by mail), timely return the ballot, and track the receipt of the ballot online. *See* Secretary of State Directive 2019-28, attached hereto as Exhibit D, pp. 5-23 - 5-26.

19. If an application for an absentee ballot is insufficient (i.e., the application is missing a required piece of information or contains a signature that does not match the elector's signature in the board of elections' voter registration system), the board of elections is required to promptly notify the voter and request that the voter submit a complete application. *Id.*, p. 5-22; Ohio Rev. Code § 3509.04(A).

20. In an effort to ensure that a voter is notified as soon as possible, the Secretary of State has directed county boards of elections to "utilize telephone numbers and email addresses to complete this process as quickly as possible. However, if electronic contact is not possible, boards must attempt to correct the missing information by mail." Secretary of State Directive 2020-11, attached hereto as Exhibit E.

21. A voter does not need to wait to be contacted by the board of elections to determine whether an absentee ballot application has been accepted. To enable a voter to quickly track the status of his/her absentee ballot application, each board of elections is required to host an "Absentee Ballot Status Lookup" on its website. Exhibit D, p. 5-28.

22. The "Absentee Ballot Status Lookup" is available to voters beginning at least the 46th day before an election through the 35th day after the election. And it must allow a voter to obtain the following information:

    a. The date the voter's absentee application was approved;
    b. The date the voter's approved absentee application was processed by the board of elections (i.e., the date the board of elections mailed the ballot or otherwise issued it);
    c. The date the voter's voted absentee ballot was received by the board of elections; and
    d. The date the voter's voted absentee ballot was accepted for counting (or, if not accepted for counting, the reason it was determined to be ineligible for counting and the deadline by which the voter may correct any deficiency).

    Exhibit D, p. 5-28.

23. Boards of elections update the "Absentee Ballot Status Lookup" with any change to a voter's absentee ballot status each business day. Secretary of State Directive 2019-33, attached hereto as Exhibit F, p. 15-18.

24. A Uniformed Service and Overseas Voter under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") can track the status of their absentee ballot using the Centralized Ballot Tracking System. Exhibit D, pp. 5-20-5-21.

4   Exhibit B, Declaration of Amanda Grandjean

25. Voters also can call their county board of elections to check the status of their absentee ballot application or absentee ballot. Contact information for each board of elections is available on the Secretary of State's website.

26. When returning a voted absentee ballot to the board of elections, an absentee voter is required to complete and sign the identification envelope and place the voted ballot inside of that envelope. Ohio Rev. Code § 3509.05.

27. The voter may return an absentee ballot by mail or hand-deliver it personally (or via a "family member") to the director of the board of elections. Ohio Rev. Code § 3509.05(A). "Family member" includes the following individuals: "the spouse of the elector, the father, mother, father-in-law, mother-in-law, grandfather, grandmother, brother, or sister of the whole or half blood, or the son, daughter, adopting parent, adopted child, stepparent, stepchild, uncle, aunt, nephew, or niece of the elector." The definition has been expanded by Secretary of State Directive to include: domestic partner, step-brother, step-sister, brother-in-law, sister-in-law, son-in-law, daughter-in-law, or other family member living in the same household. *See* Exhibit D, p. 5-12.

28. An absentee ballot returned by hand-delivery must be received by the board of elections no later than the close of polls on Election Day, i.e., by 7:30 p.m. Ohio Rev. Code § 3509.05.

29. If a voter does not want to enter the county board of elections' office to return an absentee ballot, the voter can use the board of elections' drop box.

30. An absentee ballot returned via mail must be postmarked no later than the day before Election Day and received at the board of elections office no later than the 10th day after Election Day. Ohio Rev. Code § 3509.05(B). If the absentee ballot returned via mail does not have a postmark, it must be received at the board of elections office no later than 7:30 p.m. on Election Day.

31. In order for an absentee ballot to be counted, the voter must complete and return the identification envelope with the ballot. The identification envelope must contain the voter's signature. *See Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir.2016); Ohio Rev. Code § 3509.06(D)(3).

32. Boards of elections do not send absentee ballot identification envelopes to a precinct polling location for review or tabulation. Board staff reviews absentee ballot identification envelopes and tabulates absentee ballots at the board of elections' office. Exhibit D, pp. 5-28-5-32.

33. Boards of elections may begin processing, but not tabulating, absentee ballots the day following the close of voter registration. Exhibit D, p. 5-28.

Exhibit B, Declaration of Amanda Grandjean

34. If the voter's signature on the identification envelope does not match the signature in the voter's registration record, a board of elections must send the voter a Form 11-S, along with a courtesy reply envelope (i.e., a pre-addressed return envelope). Exhibit D, p. 5-30.

35. In an effort to ensure that a voter is notified as soon as possible, the Secretary of State has directed county boards of elections to "utilize telephone numbers and email addresses" in addition to sending Form 11-S. Exhibit E.

36. Form 11-S is designed to allow an absentee voter to cure a deficiency, such as a missing or nonmatching signature, on an identification envelope. If the voter's signature on the Form 11-S corresponds with the signature in the voter's registration record, the board of elections can process the voter's absentee ballot. Exhibit D, p. 5-30.

37. Once an absentee voter has completed Form 11-S, the voter may return it to the board of elections in person, by mail or other private delivery service (e.g., UPS, FedEx, etc.), or by a family member authorized to return the voter's absentee ballot. Exhibit D, p. 5-31.

38. If a voter does not want to enter the county board of elections' office to return a Form 11-S, the voter can use the board of elections' drop box.

39. Pursuant to Secretary of State Directive, boards of elections must adhere to the following schedule when reviewing completed absentee ballot identification envelopes and issuing a Form 11-S to absentee voters:

   a. Form 11-S must be issued not later than two business days after a "defective" absentee ballot identification envelope is received by the board from the start of absentee voting through the third Saturday prior to an election (October 6 – 24, 2020, for the 2020 Presidential General Election);

   b. Form 11-S must be issued not later than one calendar day after a "defective" absentee ballot identification envelope is received by the board of elections between the third Monday and last Friday prior to an election (October 26 – 30, 2020 for the 2020 Presidential General Election); and

   c. Form 11-S must be issued on the same day that a "defective" absentee ballot identification envelope is received by the board of elections between the Saturday prior to an election and through the 6th day following an election (October 31 – November 9, 2020 for the 2020 Presidential General Election).

Exhibit D, p. 5-31.

40. A board does not provide a Form 11-S to voter whose absentee ballot was received by the board of elections after 7:30 p.m. on Election Day and is postmarked later than the day prior to the election. Exhibit D, p. 5-31.

41. To cure a nonmatching signature on an absentee ballot, the board must receive the completed Form 11-S by the 7th day after an election (November 10, 2020), or the 11-S must be post-marked by the 7th day after the election (November 10, 2020) and received

Exhibit B, Declaration of Amanda Grandjean

by the board of elections by the 10th day after the election (November 13, 2020). Exhibit D, p. 5-32.

42. Following each even-numbered year general election, states are required to complete a comprehensive survey called the Election Administration and Voting Survey (EAVS) for the U.S. Election Assistance Commission. The survey asks for the number of absentee ballots rejected for a nonmatching signature. The Secretary of State's office separately compiles information regarding the number of absentee ballots cast and the number rejected for a nonmatching signature. For the 2016 Presidential General Election, 1,206,416 absentee ballots were cast by mail in Ohio and 335 ballots were rejected for a mismatched signature. For the 2018 Gubernatorial General Election, 949,104 absentee ballots were cast by mail in Ohio and 234 ballots were rejected for a non-corresponding signature.

43. The Secretary of State's office also collected data for the 2020 Presidential Primary Election. Of the 1,565,792 absentee ballots cast by mail in that election, 217 were rejected for a nonmatching signature.

44. A voter who requested but did not receive an absentee ballot can appear at his or her polling location and vote in-person on Election Day. Ohio Rev. Code § 3509.09(B).

45. A voter who requested and received an absentee ballot is not required to vote it. The voter can appear at his or her polling location and vote in-person on Election Day by casting a provisional ballot. Ohio Rev. Code § 3509.09(B). If the voter does return the absentee ballot and also casts a provisional ballot on Election Day, the voter's absentee ballot will be counted unless it contains a nonmatching signature. Ohio Rev. Code § 3509.09(C)(2).

46. Boards of elections must offer curbside voting to any voter who is concerned about entering or who is physically unable to enter a polling location on Election Day, November 3, 2020. *See* Exhibits B, E.

47. Absentee ballots for UOCAVA ("Uniformed and Overseas Citizens Absentee Voting Act") voters must be sent beginning the 46th day prior to the November 3, 2020 Presidential General Election, which is September 18, 2020. Ohio Rev. Code § 3511.04(B).

48. Absentee voting for all other electors for the November 3, 2020 Presidential General Election begins on October 6, 2020. Ohio Rev. Code § 3509.01(B)(2).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *September 11, 2020*.

_Amanda M. Grandjean_
AMANDA M. GRANDJEAN

Exhibit B, Declaration of Amanda Grandjean



**DIRECTIVE 2020-18**
August 31, 2020

To:     All County Boards of Elections
        Board Members, Directors, and Deputy Directors

Re:     Processing Absentee Application Requests

## BACKGROUND

The Secretary of State's website provides an easy option for voters to request an absentee ballot application. The information entered by the voter will be provided to each board of elections, who will then mail the application to the voter. This Directive provides detailed instructions for processing requests for absentee ballot applications.

## INSTRUCTIONS

### PROCESSING REQUESTS FOR ABSENTEE APPLICATIONS

Consistent with a process utilized in the completion of the March 17, 2020 Primary Election, voters may request an application for an absentee ballot on the Secretary of State's website. The request form for an application requires voters to provide their name, phone number, email address, date of birth, voter registration address, county, and mailing address (if different than the voter registration address). This information will populate in a data file that will be provided to each board each night. The Secretary of State's Office will send the file through the secure board of elections portal under the new Absentee Ballot Request section.

Each board of elections must use the information in this list to:

- Determine if the voter is properly registered to vote at the address provided;

- Determine if the voter already submitted a complete application for a ballot for the upcoming election;

- Update the voter's registration to an active-active status and update the activity date for the record; and

- Mail an absentee ballot application to the address provided by the voter (if the voter has not already submitted a complete application).

The board of election must review the information each day and mail absentee applications no later than the next business day after the information is made available.

Grandean Declaration, Exh. A

If the voter is not properly registered at the address provided, the board must contact the voter and provide instructions on how to update their voter registration or vote a provisional ballot.

If the voter already submitted a complete application, the board should not send the voter another application. Whenever possible, boards should contact the voter to explain that the first application was received.

Voters may request the board of elections to mail their application to an address that is not their permanent residence. If the voter provides a mailing address, boards must mail the application to that address. If the voter did not provide a mailing address, mail the application to the voter registration address.

### UPDATING VOTER ACTIVITY

Directives 2020-14 and 2020-15 reminded boards of elections that "voter activity includes voting, requesting an absentee ballot application, registering to vote, updating or confirming an address with a board of elections or the BMV, or signing a candidate or issue petition that is verified by a board of elections."

If the board receives a request for an absentee ballot application via telephone, the board must provide an application to the voter. However, the board must receive a completed application before updating the voter's registration status to active-active and updating the activity date associated with the transaction.

If you have any questions concerning this Directive, please contact the Secretary of State's elections counsel at (614) 728-8789.

Yours in service,

Frank LaRose
Ohio Secretary of State

Grandean Declaration, Exh. A



**DIRECTIVE 2020-16**
August 12, 2020

To:     All County Boards of Elections
        Board Members, Directors, and Deputy Directors

Re:     The Use of Drop Boxes and Additional Instructions for Curbside Voting

## SUMMARY

This Directive provides instructions on the continuing use of a secure drop box at each board of elections, and on curbside voting.

## DROP BOXES

On March 25, 2020, the Ohio General Assembly passed H.B. 197. Governor DeWine signed H.B. 197 into law on March 27, 2020. The legislation contained many provisions concerning Ohio's response to COVID-19, including changes to the 2020 Primary Election. Those changes related to the 2020 Primary Election were temporary, uncodified law and do not appear in the Ohio Revised Code.

Specifically, H.B. 197 required boards to have a secure receptacle outside the office for the return of ballots.[1] As such, each board of elections procured and installed a secure receptacle outside of their offices. This directive requires the continuing use of that secure receptacle for the return of ballots and expands its use to include absentee ballot application forms. The drop box must be monitored 24/7, and at least one Republican and one Democratic member of the board or board staff must together retrieve the drop box's contents at least once daily. Boards of elections must also retrieve the contents at noon on October 31, 2020 and 7:30 p.m. on November 3, 2020.

Boards of elections must continue to use the drop box that was installed outside each board of elections pursuant to H.B. 197 for the 2020 Primary Election for the November 3, 2020 election cycle for the return of absentee ballot applications and ballots. Beginning September 1, 2020, boards of elections must begin to provide voters with 24/7 access to the drop box, which will of course, already be securely monitored. Boards of elections are prohibited from installing a drop box at any other location other than the board of elections.

---

[1] H.B. 197, Section 32(E)(1).

Grandean Declaration, Exh. B

## CURBSIDE VOTING

As stated in Directive 2020-11, boards of elections must offer curbside voting to any voter who is physically unable to enter a polling location. Boards should also consider placing signage outside the polling location setting forth the process for curbside voting and how to contact someone inside the polling location for assistance. Boards should consider developing specific parking or clearly marked spots for curbside voting and having bipartisan precinct election officials or volunteers dedicated to continuously monitoring the parking lot, parking spaces, and chosen method of communication, whether that is a designated telephone number or other notification system that voters will use to contact election officials.

Precinct election officials and election officials must follow the procedures set forth in Election Official Manual Chapter 7, Section 1.04 and the Ohio Secretary of State Health Guidance for Boards of Elections. Additionally, boards of elections must consider the following procedures for curbside voting:

- In addition to the personal protective equipment protocols outlined in the Ohio Secretary of State Health Guidance for Board of Elections, wearing gloves during the *assembly* of voting materials that will be used during the curbside voting transaction prior to delivering the voting material to the voter;
- Offering and asking the voter to utilize hand sanitizer before and after the voting transaction and to wear a mask prior to and throughout the voting transaction;
- Direct voters to only open the car window as much as is necessary to communicate with the precinct election official and to pass back their ballot or other necessary materials;
- Require the precinct election officials or election officials to remain six feet away from the voter and vehicle until necessary to deliver and collect materials; and
- Properly disposing of the precinct election officials' or election officials' personal protective equipment and gloves.

Any voter that is in line to vote curbside by 7:30 p.m. on November 3, 2020 must be permitted to vote.

If you have any questions concerning this Directive, please contact the Secretary of State's elections counsel at (614) 728-8789.

Yours in service,

Frank LaRose
Ohio Secretary of State

Grandean Declaration, Exh. B



**DIRECTIVE 2020-13**
July 17, 2020

To:     All County Boards of Elections
        Board Members, Directors, and Deputy Directors

Re:     Preparation for the Statewide Mailings of Absentee Ballot Applications for the
        November 3, 2020 General Election

**SUMMARY**

  Since 2012, the General Assembly has authorized the Secretary of State to send absentee ballot applications to all Ohio voters in gubernatorial and presidential general elections. This year, the Ohio Controlling Board has authorized the Secretary of State's Office to use federal funds to conduct a statewide mailing of absentee ballot applications for the upcoming November 3, 2020 General Election.[1] This Directive requires each board of elections to update its voter registration database and resolve duplicate records in preparation for the Secretary of State's statewide mailing.

**BACKGROUND AND OVERVIEW**

  To ensure fairness and uniformity across counties, to reduce lines at polling places on November 3, 2020, and to make participation in the 2020 General Election as safe, accessible and convenient as possible, the Secretary of State's Office will mail an absentee ballot application by non-forwardable mail to every registered Ohio voter in "active" or "confirmation" status.

  The absentee ballot application will be pre-filled with the voter's name, current address, and local voter identification number (represented numerically and as a barcode) and mailed to the voter's address as it appears in the Statewide Voter Registration Database ("SWVRD"). The voter must complete the absentee ballot application by providing the voter's date of birth, identification, and signature before sealing the application in the reply envelope and submitting it to the voter's county board of elections in person or by mail, with the voter affixing a first-class stamp.[2]  The United States Postal Service ("USPS") is expected to deliver the initial applications during the first two weeks of September 2020.

---

[1] R.C. 3501.05.
[2] R.C. 3509.03.

Grandean Declaration, Exh. C

**INSTRUCTIONS**

I.      **PREPARATION FOR INITIAL MAILING**

To facilitate the initial mailing of absentee ballot applications, each county board of elections must do all of the following:

- Enter into the county voter registration database all new voter registrations and changes of address or name, including information from returned confirmation notices received through July 24, 2020, and ensure that those new registrations and changes have been transmitted to the SWVRD. **Do not wait until July 29, 2020, to enter new voter registrations, changes of address or name, or information from returned confirmation notices. The board must enter this information into its county voter registration database at least once a week throughout July.**

- No later than July 29, 2020, resolve all in-county and cross-county duplicate records that exist as of July 24, 2020. Remember, it is *never* an acceptable practice for any county board of elections to simply "keep" a voter registration record to avoid resolving duplicate records.

- No later than July 24, 2020, review all alternate mailing addresses in the SWVRD (e.g., P.O. Boxes) for the county and make sure that all alternate mailing addresses associated with a voter's record in the SWVRD are current and relevant to the elector's voter registration rather than some other election administration purpose (i.e., if the board has populated the elector's alternate mailing address with the address for a previous election's absent voter ballot and that alternate mailing address was sent to the SWVRD as the elector's alternate mailing address, that address should be removed since it is associated with absentee balloting rather than voter registration).

II.  **PREPARATION FOR SUPPLEMENTAL MAILINGS**

In early October, the Secretary of State's Office will supplement the first mailing by sending an absentee ballot application to any individual who has registered to vote or changed their name or address between July 29, 2020 and October 2, 2020. To facilitate this mailing, each board of elections must do all of the following:

- Enter into the county voter registration database all new voter registrations and changes of address or name, including information from returned confirmation notices received through September 30, 2020, and ensure that those new registrations and changes have been transmitted to the SWVRD. **Do not wait until October 2, 2020 to enter new voter registrations, changes of address or name, or information from returned confirmation notices. The board must enter this information into its county voter registration database at least once a week throughout September.**

- No later than 5:00 p.m. on October 2, 2020, resolve all in-county and cross-county duplicate records that exist as of September 30, 2020.

Grandean Declaration, Exh. C

The Secretary of State's Office will conduct a second supplemental mailing for any individual who registered to vote or changed their name or address between October 3 and October 9, 2020. To facilitate this mailing, each board of elections must do all of the following:

- Enter into the county voter registration database all new voter registrations and changes of address or name, including information from returned confirmation notices received through October 9, 2020, and ensure that those new registrations and changes have been transmitted to the SWVRD. **Do not wait until October 9, 2020 to enter new voter registrations, changes of address or name, or information from returned confirmation notices.**

- No later than 5:00 p.m. on October 9, 2020, resolve all in-county and cross-county duplicate records that exist as of October 8, 2020.

## III.    MANDATORY POSTING AT VOTING LOCATIONS ON ELECTION DAY

All county boards of elections must post a copy of the statewide absentee ballot application mailing at each polling location on Election Day as a reference for voters who are marked in the pollbook as having to cast a provisional ballot on account of having requested an absentee ballot. The prescribed posting will be provided to county boards of elections under separate cover at a later date.

If the board has any questions about this Directive, please contact the Secretary of State's elections counsel at (614) 728-8789.

Yours in service,

Frank LaRose
Ohio Secretary of State

Grandean Declaration, Exh. C



cast the ballot using the voting machine. The board is not required to issue, and an in-person absentee voter is not required to complete, an Identification Envelope – Statement of Voter (Secretary of State Form 12-A), if the voter is casting their ballot at the board of elections office or other site designated for in-person absentee voting.[26]

If an absentee voter chooses to take the ballot home, the board **must** provide the absentee voter a return mailing envelope and Identification Envelope – Statement of Voter (Secretary of State Form 12-A).[27]. A voter who receives an absentee ballot in person and takes the ballot home to vote may return it to the office of the board of elections through the mail or by personal delivery:

### Return by Mail

☐ The absentee ballot must be postmarked no later than the day before Election Day and received at the board of elections office no later than the 10th day after Election Day.

☐ If the absentee ballot does not have a postmark, it must be received at the board of elections office no later than 7:30 p.m. on Election Day.

☐ A postmark does not include mail sent using a postage evidencing system, including a postage meter or postage from private companies that dispense postage through the internet (e.g., Stamps.com), known as the PC Postage program.[28]

### Return by Personal Delivery

A voter may deliver the absentee ballot personally or may have a family member[29] deliver the absentee ballot by the close of polls on Election Day at the office of the board of elections only. No one may return a voted absentee ballot to a precinct polling location.[30]

---

[26] R.C. 3509.051(B).
[27] See Chapter 5, Section 1.04, of the Ohio Election Official Manual.
[28] R.C. 3509.05(B)(2). See also, 39 CFR 501.01.
[29] R.C. 3509.05(A): "Family member" includes spouse, domestic partner, mother, father, step-mother, step-father, mother-in-law, father-in-law, brother, sister, step-brother, step-sister, half brother, half sister, brother-in-law, sister-in-law, grandmother, grandfather, aunt, uncle, child, step-child, son-in-law, daughter-in-law, or other family member living in the same household.
[30] R.C. 3509.05(A).

Grandean Declaration, Exh. D



ballot issued to the UOCAVA voter will be the one used when remaking the ballot upon return. It will have a stub.

If the board receives more than one absentee ballot request from a UOCAVA voter and has already issued that voter a ballot, the board may not transmit another ballot to the same voter unless the voter's subsequent request states the voter submitted an initial request more than 30 days before the election, but has not received a ballot as of the 15th day before the election. The board must also ensure that it has not received a voted ballot from that voter.[62]

### Federal Write-In Absentee Ballot (FWAB)

The Federal Write-In Absentee Ballot (FWAB) may be used by a UOCAVA voter to vote for all federal, state, and local offices, questions, and issues in every election.[63]

The voter will download the FWAB from the Federal Voting Assistance Program website at www.fvap.gov and complete the ballot with the information the board provides in the election notices explained above.

If, after mailing the FWAB to the board of elections, the voter receives the requested absentee ballot, the voter may vote the ballot and return it to the board of elections. If the board receives the voter's valid absentee ballot by the 10th day after the election, it must count the absentee ballot and not the FWAB.

The declaration accompanying a FWAB may be used simultaneously to register the person to vote for the next election if it is received no later than 30 days before the election. If the UOCAVA voter who submits a FWAB to the board of elections after that point and is not already a registered Ohio voter, the ballot cannot count. However, the declaration will serve to register an otherwise eligible voter to vote in future elections.[64]

3. **Enter UOCAVA Voter Data into the Centralized Ballot Tracking System (CBTS)**

The Centralized Ballot Tracking System (CBTS) allows UOCAVA voters to track the status of their absentee ballots.[65] When the board receives a valid FPCA or Secretary of State Form 11-E, it must enter the voter into the CBTS to create a voter record. The CBTS will automatically generate a unique, personal identification number (PIN) for the voter. The board must provide the voter

---

[62] R.C. 3511.08.
[63] R.C. 3511.14.
[64] R.C. 3511.14(B).
[65] R.C. 3511.021(B).

Grandean Declaration, Exh. D



ballot issued to the UOCAVA voter will be the one used when remaking the ballot upon return. It will have a stub.

If the board receives more than one absentee ballot request from a UOCAVA voter and has already issued that voter a ballot, the board may not transmit another ballot to the same voter unless the voter's subsequent request states the voter submitted an initial request more than 30 days before the election, but has not received a ballot as of the 15th day before the election. The board must also ensure that it has not received a voted ballot from that voter.[62]

### Federal Write-In Absentee Ballot (FWAB)

The Federal Write-In Absentee Ballot (FWAB) may be used by a UOCAVA voter to vote for all federal, state, and local offices, questions, and issues in every election.[63]

The voter will download the FWAB from the Federal Voting Assistance Program website at www.fvap.gov and complete the ballot with the information the board provides in the election notices explained above.

If, after mailing the FWAB to the board of elections, the voter receives the requested absentee ballot, the voter may vote the ballot and return it to the board of elections. If the board receives the voter's valid absentee ballot by the 10th day after the election, it must count the absentee ballot and not the FWAB.

The declaration accompanying a FWAB may be used simultaneously to register the person to vote for the next election if it is received no later than 30 days before the election. If the UOCAVA voter who submits a FWAB to the board of elections after that point and is not already a registered Ohio voter, the ballot cannot count. However, the declaration will serve to register an otherwise eligible voter to vote in future elections.[64]

3.  **Enter UOCAVA Voter Data into the Centralized Ballot Tracking System (CBTS)**

The Centralized Ballot Tracking System (CBTS) allows UOCAVA voters to track the status of their absentee ballots.[65] When the board receives a valid FPCA or Secretary of State Form 11-E, it must enter the voter into the CBTS to create a voter record. The CBTS will automatically generate a unique, personal identification number (PIN) for the voter. The board must provide the voter

---

[62] R.C. 3511.08.
[63] R.C. 3511.14.
[64] R.C. 3511.14(B).
[65] R.C. 3511.021(B).

Grandean Declaration, Exh. D



notification of the assigned PIN, which the voter will use to log in and view ballot status. Secretary of State Form 12-J may be used to notify a voter of their assigned PIN and to inform the voter how to access the CBTS website and track the ballot.

Once the board creates a voter record, it is required to update and maintain the accuracy of that record. Each absentee ballot record must be updated with the following information:

☐ Date the board received the FPCA or Secretary of State Form 11-E;

☐ Date the board transmitted the blank absentee ballot to the voter;

☐ Date the board received the voted absentee ballot;

☐ What errors, if any, the board detected on the absentee ballot ID envelope; and

☐ Whether the absentee ballot was counted.

**All CBTS records must be updated completely before the official canvass is completed.**

If you do not have a copy of the CBTS manual, please contact the Secretary of State's Elections Division.

## SAFE AT HOME VOTERS

Substitute House Bill 359 from the 131st General Assembly created an address confidentiality program, known as the "Safe at Home" program, for victims of crimes, such as domestic violence, human trafficking, rape, sexual battery, and menacing by stalking. The Ohio Secretary of State's office administers this program and is responsible for creating an absentee ballot application and identification envelope for participants of the program. To protect their confidentiality, a participant in the program must vote *only* absentee by mail, using their identification number on the absentee ballot application and identification envelope instead of their address.[66] A participant with questions regarding how to request and receive an absentee ballot without compromising the confidentiality of their address should contact the Safe at Home Program at the Secretary of State's office at 614.995.2255.

---

[66] R.C. 3509.04(B).

Grandean Declaration, Exh. D



## Section 1.05 Processing Absentee Ballot Applications

### PRE-PRINTING ONLY NAME AND ADDRESS ON ABSENTEE BALLOT APPLICATION

In the required fields of any type of absentee ballot application, the board may pre-print only a voter's name and address before mailing to a voter who requests it.[67] None of the other required pieces of information on any type of absentee ballot application shall be completed by election officials on a voter's behalf, unless the voter requests assistance and is a voter with a disability or with literacy challenges.[68]

### PROHIBITION ON PRE-PAYING POSTAGE ON ABSENTEE BALLOT RETURN

No board is permitted to pre-pay return postage for any type of absentee ballot application.[69]

### SUBMISSION BY FAX OR EMAIL

Only UOCAVA voters may submit absentee ballot applications by mail, email, or fax.[70]

Non-UOCAVA absentee ballot applications must be mailed or delivered to the board of elections in person. A board may not accept or process a non-UOCAVA absentee ballot application received by fax or email.

### INCOMPLETE APPLICATIONS

If the board receives an application for an absentee ballot that does not contain all the required information listed above, it promptly must notify the voter of the missing information and ask the voter to resubmit a complete application containing all required information.[71]

In the event that an absentee ballot application from a UOCAVA voter is missing some of the required information or that the board of elections is unable to open the file in which the voter transmitted the FPCA, the board must contact the voter immediately, using the quickest and most effective available means of communication. Boards must attempt to contact the voter using all the contact information provided on the form and

---

[67] R.C. 3509.03(F).
[68] R.C. 3505.24; R.C. 3509.03; R.C. 3511.02(F); R.C. 3511.10.
[69] R.C. 3509.03; R.C. 3511.02(E). This prohibition does not affect UOCAVA voters' use of the USPS Official Absentee Balloting Materials postage-paid envelope if they choose to return their FPCAs through the USPS.
[70] R.C. 3503.191(B); R.C. 3511.021(A)(2).
[71] R.C. 3509.04(A).

Grandean Declaration, Exh. D



must ask the voter to resubmit a complete application containing all required information.

The board may not return an incomplete application of any type to the voter, as once an application is received at the board office, it is a public record. In addition, election officials may not complete an application's missing information on behalf of the voter. The voter must personally complete any missing information on the application, unless the voter has paperwork on file with the board of elections to receive assistance from a designated attorney-in-fact.[72]

## ISSUING BALLOTS

**Absentee voting begins 46[73] days before each election for UOCAVA voters only and on the day after the close of registration before each election for all other types of absentee voters.[74]** Due to the earlier start date for UOCAVA voting, boards must have ballots proofed and ready to mail prior to the 46th day before each election.

Once the board receives an application that meets the requirements explained above, it must provide the voter with the correct ballot for the voter's precinct, based on the voter's residence address.

Boards of elections may not outsource the mailing of absentee ballots to vendors or any other third party unless the board has received prior written authorization from the Director of Elections, conditioned upon submission of appropriate quality assurance procedures.

### IDENTIFICATION ENVELOPE AND PRE-PRINTING ONLY NAME AND ADDRESS

Ohio law requires boards of elections to provide an identification envelope with the absentee ballot (Forms 12-A and 12-C).[75] State law permits boards of elections to pre-print the voter's name and address (at which the voter is registered to vote) on the identification envelope unless the voter has a confidential voter registration record.[76] None of the other required pieces of information on any type of absentee ballot application shall be completed by election officials on a voter's behalf, unless the voter requests assistance and is a voter with a disability or literacy challenges.[77]

Boards of elections are instructed to pre-print the voter's name and address (at which the voter is registered to vote) on the voter's identification envelope prior to providing it

---

[72] R.C. 3501.382; R.C. 3509.03; R.C. 3511.02.
[73] R.C. 3511.04.
[74] R.C. 3509.01(B).
[75] R.C. 3509.04; R.C. 3511.05.
[76] R.C. 111.42; R.C. 3511.02(F).
[77] R.C. 3505.24; R.C. 3509.04; R.C. 3511.05(E); R.C. 3511.10.

Grandean Declaration, Exh. D



to the voter. Boards of elections may fulfill this requirement by pre-printing the voter's name and address directly onto the identification envelope, by pre-printing the voter's name and address onto a sticker or label and then affixing the sticker or label to the identification envelope, or by some other method which accomplishes this purpose.

When a voter's name is placed anywhere on the identification envelope by a board of elections (i.e., other than in the blanks identified for this purpose on Forms 12-A or 12-C), the name portion of the statutory requirement for the identification envelope to contain the voter's name[78] is satisfied.

The statutory prohibition against pre-printing information other than the voter's name and address does not limit a board from printing other information helpful to the board in administering its duties (e.g., voter identification number, ballot style, precinct, party-affiliation, municipality or other jurisdictions, bar codes, etc.). However, the board shall not pre-print the address of a participant in the Safe at Home program.[79]

## PROHIBITION ON PAYING RETURN POSTAGE ON AN ABSENTEE BALLOT

No board is permitted to pre-pay return postage for any absentee ballot.[80]

## MAILING CONSIDERATIONS AND INSTRUCTIONS

These instructions implement several administrative practices that are intended to increase the operational likelihood that ballots received after Election Day, if otherwise valid, can be included in the official canvass of the election. The instructions are based on close collaboration between state and local election officials in Ohio and the U.S. Postal Service.

USPS-expected level of service for point-to-point delivery of First-Class Mail is 2 to 5 days, and under ordinary circumstances, First-Class Mail in machineable letter-size envelopes is postmarked in an automated process versus flat-size envelopes, which generally receive a lower percentage of postmarks.

While no single operational or administrative action provides a complete remedy to the situation, the implementation of several administrative practices may increase the operational likelihood that ballots received after Election Day, if otherwise valid, can be included in the official canvass of the election. Therefore, boards of elections must implement the following:

- Include with every absentee ballot (except those issued and cast in person) the notice prescribed by the Secretary of State's office, Form 12-1. A board of

---

[78] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D).

[79] R.C. 3509.04.

[80] R.C. 3509.04; R.C. 3511.04. This prohibition does not affect UOCAVA voters' use of the USPS Official Absentee Balloting Materials postage-paid envelope to return their ballots through the USPS.

Grandean Declaration, Exh. D



elections may print the SOS-prescribed notice on other instructional material that the board already inserts into its absentee ballot packets (e.g., on the back of Secretary of State Form 12, "Instructions to Absentee Voters).

- USPS highly recommends that all county boards of elections use letter-size courtesy reply envelopes.[81] As noted above, use of this envelope size will increase the operational likelihood that the ballot receives a postmark. However, even letter-size envelopes could be treated as flats depending on the weight of the absentee ballot return envelope, which includes the ballot sheets enclosed in an identification envelope. We cannot know how many sheets will be necessary to accommodate ballot length from one election to the next. The use of letter-size envelopes (depending on ballot length) will increase the likelihood of postmarking in most counties for most elections. Boards of elections not already using letter-size courtesy reply envelopes must carefully consider whether continuation of this practice for the presidential general election is in the best interest of its county's voters given the recommendation from USPS.

- USPS recommends that boards of elections contact and leverage available Postal resources that support election mail coordination, mailpiece design, mailing preparation and entry activities and coordinating mailpiece delivery and pickup.

  **For assistance with mailpiece design, contact a Mailpiece Design Analyst (MDA) by calling the MDA Support Center at (855) 593-6093 (hours of operation are Monday – Friday, 7 am - 5 pm CT) or by sending your request by email to mda@usps.gov. Please contact and develop a relationship with your local Election Mail Coordinator.**

- USPS recommends that all trays and sacks with mailings of ballot materials affix Tag 191, Domestic and International Ballots. This bright green tag provides a high degree of visibility on ballot mail as it enters Postal processing centers. These tags are available by contacting an USPS Election Mail Coordinator (see above).

- Boards of elections must use First-Class Mail postage rather than standard or non-profit postage rates when paying for the delivery of outbound absentee ballots. Use of USPS-approved practices to maximize postage discounts for First-Class Mail (e.g., presort First-Class Mail) are encouraged.

- Remember, USPS requires that the balloting materials for all types of absentee ballots, whether disseminated in hardcopy or electronically, must indicate in a prominent location the proper amount of First-Class Mail postage that must be paid. This information must be included in the balloting materials (i.e., on the

---

[81] This recommendation does not contemplate the use of #10 business envelopes. In fact, USPS regulations allow a letter size envelope to be up to 6⅛ inches in height, 11½ inches wide, and ¼ inch thick. This maximum size is substantially larger than a #10 business envelope.

Grandean Declaration, Exh. D



ballot instructions, mailing instructions, or the envelope) with the marking "First-Class Mail postage must be applied."

- Alternatively, the marking "Apply First-Class Mail postage here" may be printed in the upper-right corner of the address side of the envelope used by the voter to return the ballot to election officials. USPS will also accept approved variations of the above markings. Additionally, balloting materials must indicate, in a prominent location, the specific amount of First-Class Mail postage required for the return of the ballot to election officials. The marking requirements will not apply to balloting materials that are qualified under the special exemptions specified by USPS.[82]

> **Postage Evidencing – The term "postage evidencing system," as used in R.C. 3509.05(B)(2), refers to postage meters or private companies that dispense postage through the internet (e.g., Stamps.com), known as the PC Postage program.[83] As such, absentee ballots bearing postage affixed by a postage meter or through a PC Postage company cannot be accepted after Election Day, even if postmarked by the day before Election Day.**

- All other forms of postage are acceptable for post-election receipt by the board of elections, including postage labels obtained at a USPS customer service window or from a USPS Self-Service Kiosk.

- Furthermore, please note that postage labels (i.e., Postage Validation Imprint, or PVI) obtained at a USPS customer service window or through a Self-Service Kiosk meet the USPS definition of a "postmark," meaning no other forms of postmarking are necessary. Receiving a postmark through the retail window PVI or the Self-Service Kiosk postage label are the USPS-preferred methods for ensuring that postmarking occurs on ballots being mailed within a week of Election Day.

---

[82] USPS Domestic Mail Manual 703.8.1.2.
See also, http://about.usps.com/election-mail/election-mail-resources.htm.
[83] See 39 CFR 501.01.

Grandean Declaration, Exh. D



**Often when USPS processes mail, an ID Tag, in the form of a fluorescent bar code, is printed by USPS on the back of the envelope or flat. While the data contained in the ID Tag bar code is largely informational for USPS operations, it contains a date/timestamp. The ID Tag is not considered a postmark by USPS.[84] However, it is common sense to use whatever date/time information is provided by USPS on the physical envelope to qualify for counting any otherwise valid absentee ballot.**

- Therefore, for purposes of R.C. 3509.05(B) only, whenever an official USPS postmark is not present or is not legible, but a readable ID Tag is printed on the envelope, the board of elections must obtain a bar code reader to decode the ID Tag on the envelope. In these instances, if the date/timestamp contained in the ID Tag is no later than the day before Election Day (and the exceptions of R.C. 3509.05(B)(2) regarding postage evidencing systems are not present), the board shall proceed with determining whether or not the absentee ballot is otherwise eligible using the ID Tag as a proxy for a postmark.

- The Secretary of State's office purchased scanners to support boards of elections on a scheduled basis. Please contact your assigned regional liaison to schedule the use of a scanner before your official canvass.

## POLL LIST TO IDENTIFY ELECTORS REQUESTING ABSENT VOTER'S BALLOT.

The board must mark the name of each registered elector in the precinct who requested an absentee ballot for that election.[85] If a voter who is marked in the poll book as having requested an absentee ballot appears at a precinct polling location to vote on Election Day, the voter will be required to cast a provisional ballot.[86]

---

[84] https://about.usps.com/handbooks/po408/ch1_003.htm.
[85] This does not apply to Safe at Home address confidentiality program participants per R.C. 111.44.
[86] R.C. 3509.09.

Grandean Declaration, Exh. D



## ABSENTEE BALLOT STATUS LOOKUP

☐ Through each board of elections website, absentee voters in the county must be permitted to identify the status of their absentee ballot from the date of application to the date the ballot was accepted for counting. Specifically, each board website must provide the voter with the following information:

☐ The date the voter's absentee application was approved;

☐ The date the voter's approved absentee application was processed by the board of elections (i.e., the date the board of elections mailed the ballot or otherwise issued it);

☐ The date the voter's voted absentee ballot was received by the board of elections; and

☐ The date the voter's voted absentee ballot was accepted for counting (or, if not accepted for counting, the reason it was determined to be ineligible for counting and the deadline by which the voter may correct any deficiency).

This search functionality must be available to voters beginning at least the 46th[87] day before an election through the 35th day after that same election. For more information on voter access to information, please refer to Chapter 15 Miscellaneous Duties, Section 1.09.

## Section 1.06   Processing Absentee Ballots

All absentee ballots must be returned by mail or in person to the office of the board of elections. No ballot may be returned by fax or email. **Ohio law prohibits the electronic return of an absentee ballot and the processing or counting of any ballot returned electronically.[88]**

The board must examine each returned absentee ballot envelope for eligibility before the board may remove the ballot from the envelope.

Boards of elections may begin processing, but not tabulating, absentee ballots not earlier than the day following the close of voter registration.[89] "Processing" includes:

☐ Determining whether a UOCAVA voter signed the ballot and submitted it for mailing not later than 12:01 a.m. on Election Day.[90] If the board receives the ballot within the timeframe discussed in the next section, it shall be deemed to have been submitted for mailing by 12:01 a.m. on Election Day;

---

[87] R.C. 3511.04,
[88] R.C. 3511.021(A)(4),
[89] R.C. 3505.27,
[90] R.C. 3511.11(C),

Grandean Declaration, Exh. D

- ☐ Confirming that the board received the ballot by the close of polls on Election Day at the office of the board of elections if delivered in person, or by the 10th day after Election Day if delivered by mail. **Please note that a postmark is not required in order for a UOCAVA ballot to be valid.** The board must count an otherwise valid UOCAVA ballot regardless of whether it contains a timely postmark, a late postmark, or no postmark;[91]

- ☐ Opening absent voter's ballot envelopes that have been examined and accepted as valid. If a ballot is not sealed in the identification envelope, avoid looking at the markings on the ballot, place the ballot in the identification envelope, and seal it.[92]

- ☐ Determining whether the stub is still attached;

- ☐ Preparing the absent voter's ballot for scanning; and

- ☐ Scanning of the absent voter's ballot using automatic tabulating equipment at a central counting station;[93] and identifying absent voter's ballots that cannot be "read" or are "rejected" by the ballot scanning device to determine whether the ballot needs to be remade so that it can be read by the scanner. This includes remaking of UOCAVA ballots transmitted by email or fax.

Apart from those presenting valid identification and voting in-person immediately, Ohio law requires all absentee voters to place their ballot in the ID envelope and seal the envelope. The board of elections must clearly indicate that the ballot must be sealed within the ID envelope in order to count. If the board receives an absentee ballot that is not sealed in its identification envelope, the board must seal the envelope. If the ballot is not inside the identification envelope, avoid looking at the markings on the ballot, and place the ballot in the identification envelope and seal it.

---

[91] R.C. 3511.11(C).
[92] R.C. 3511.11(A).
[93] In no circumstance may any board initiate the human-readable reporting of election results from absentee ballots processed prior to 7:30 p.m. on Election Day. R.C. 3505.26.

Grandean Declaration, Exh. D



At the close of in-person absentee voting each day, a bipartisan team of board of elections' employees must secure all poll books, voting equipment, voted ballots, and ballot boxes. The poll books, voting equipment, voted ballots, and ballot boxes must be stored in a manner that prevents unauthorized access. Prior to the start of in-person absentee voting each day, a bipartisan team of board of elections' employees must inspect all voting equipment and ballot boxes to ensure that all tamper-evident seals are intact. The board must program its voting equipment to utilize all available security features, such as the use of a password to open or close the equipment. As a reminder, each board must ensure that when any voting machine is powered-down after the close of in-person absentee voting each day, the machine does not tabulate any votes cast on it.

## INCOMPLETE OR NON-CONFORMING IDENTIFICATION ENVELOPE[94]

Whenever a board of elections receives an absentee ballot identification envelope that is missing required information or that contains information that does not conform to the voter's registration record, and the board of elections cannot determine the voter's eligibility without the missing or nonconforming information (see Section 1.07 below), the board of elections must contact the absentee voter to give the voter an opportunity to supplement the voter's identification envelope so the voter's ballot can be tabulated. The board must meet this requirement by issuing Secretary of State Form 11-S to the voter. Boards must include a courtesy reply envelope (pre-addressed return envelope) with every Secretary of State Form 11-S issued.

Secretary of State Form 11-S provides spaces for a board of elections to print the voter's name and registration address, and to identify for the voter the specific information that is missing or in error (the "nature of the defect") on the voter's absentee ballot identification envelope. The voter need only provide the information that cures the defect when returning a completed Form 11-S and does not need to sign and date Form 11-S, unless the voter's signature on the voter's absentee ballot identification envelope was omitted or did not reasonably match the voter's signature on file with the board of elections.

In the event that the board issues Form 11-S because the voter's driver license number or last four digits of the voter's Social Security number provided on the identification envelope does not match the information as recorded in the statewide voter registration

---

[94] Please note that pursuant to a court order, if the nature of the non-matching information is such that an absentee voter provided the number above their picture and not the driver license number (two alphabet letters followed by six numbers), the Board must notify the voter of such error by telephone or in writing, within two business days of receiving the application or voted ballot. The voter so notified must be permitted to appear in person at the office of the Board to provide the correct information. In the case of a returned absent voter's ballot, the voter shall have until the 10th day after the election to provide this information to enable their ballot to be counted. See Directive 2008-80.

Grandean Declaration, Exh. D



database, and the voter completes and returns Form 11-S with the same information provided on the identification envelope, the board must review its voter registration records – including original paper records if necessary – prior to the 10th day before the election to determine whether the mismatch is a result of data entry error.

Whenever a voter has requested the voter's absentee ballot to be mailed by the board of elections to an address other than the address at which the voter is registered to vote, and the voter's absentee ballot identification envelope is "defective," the board must issue Form 11-S to both the address at which the voter is registered to vote and the address to which the voter had requested the voter's absentee ballot be mailed by the board.[95]

Boards of elections must adhere to the following schedule when reviewing completed absentee ballot identification envelopes and issuing Form 11-S to absentee voters:

- ☐ Form 11-S must be issued not later than two business days after a "defective" absentee ballot identification envelope is received by the board from the start of absentee voting through the third Saturday prior to an election;

- ☐ Form 11-S must be issued not later than one calendar day after a "defective" absentee ballot identification envelope is received by the board of elections between the third Monday and last Friday prior to an election; and

- ☐ Form 11-S must be issued on the same day that a "defective" absentee ballot identification envelope is received by the board of elections between the Saturday prior to an election and through the 6th day following an election.

For purposes of this section, "issued" means that Form 11-S has been presented by the board of elections to the USPS, with accurate first-class postage affixed by the board of elections necessary for first-class delivery.

It is not necessary for a board to provide Form 11-S to an absentee voter whose ballot was received by the board of elections after 7:30 p.m. on Election Day and is postmarked later than the day prior to the election.

Once an absentee voter has completed Form 11-S, the voter may return it to the board of elections in person, by mail or other private delivery service (e.g., UPS, FedEx, etc.), or by any person authorized by state law to return the voter's absentee ballot.[96]

---

[95] Regardless of whether the voter requested assistance in casting the absentee ballot, if a voter requests assistance to supplement the voter's identification envelope the board of elections must send two employees, not of the same political party, to the voter to provide assistance. *Ray v. Franklin County Board of Elections* Case No. 2:08-CV-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008).
[96] R.C. 3509.05(A).

Grandean Declaration, Exh. D



In the case of voters with disabilities or UOCAVA voters, all county boards of elections must provide reasonable accommodations, as follows:

☐ Voters with Disabilities – Regardless of whether the voter requested assistance in casting the absentee ballot, if a voter requests assistance to supplement the voter's identification envelope, the board of elections must send board employees, not of the same political party, to the voter to provide assistance.[97]

☐ UOCAVA Voters – A UOCAVA voter's board of elections must provide notice to the voter in the same manner in which the voter requested transmission of the ballot by the board to the voter (i.e., by email, facsimile, or by mail, if application was made by mail or in person).

A completed Form 11-S must be received by the board of elections by the 7th day after an election,[98] or be post-marked by the 7th day after the election and received by the board of elections by the 10th day after the election, in order to cure the voter's defective absentee ballot identification envelope and have the ballot included in the official canvass, which may begin on the 11th day following the election.

## Section 1.07   Mandatory Step-by-Step Process for Counting Absentee Ballots

### STEP 1: DETERMINE WHETHER THE BALLOT WAS TIMELY SUBMITTED:

An absentee ballot returned in person to the board of elections office must be delivered by 7:30 p.m. on Election Day.[99] The ballot also may be returned to the board's designated location for in-person absentee voting at any time during in-person absentee voting.

An absentee ballot returned via mail must be postmarked no later than the day before Election Day and received at the board of elections office no later than the 10th day after Election Day. If the absentee ballot returned via mail does not have a postmark, it must be received at the board of elections office no later than 7:30 p.m. on Election Day.

---

[97] *Ray v. Franklin County Board of Elections* Case No. 2:08-CV-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008).
[98] R.C. 3509.06(D)(2)(b).
[99] R.C. 3509.05.

Grandean Declaration, Exh. D



**DIRECTIVE 2020-11**
July 6, 2020

To:     All County Boards of Elections
        Board Members, Directors, and Deputy Directors

Re:     2020 Coronavirus Aid, Relief, and Economic Security ("CARES") Act Funds – Election
        Administration Preparedness for November 3, 2020 Presidential General Election.

<u>**SUMMARY**</u>

In March 2020, Congress passed, and President Trump signed into law the CARES Act to deliver an economic relief package of over $2 trillion to assist the country in coping with the public health and economic impacts of COVID-19. The CARES Act includes $400 million in Help America Vote Act ("HAVA") emergency funds, made available to states to prevent, prepare for, and respond to the coronavirus for the 2020 federal election cycle. Ohio's share of the appropriated funds is $12,861,311. On June 15, 2020, the Secretary of State's Office received authority from the State Controlling Board to provide these funds to the boards of elections. Each county board of elections will receive a block grant in an amount based on its number of registered voters, which must be used in connection with the November 3, 2020 General Election. This Directive outlines the Secretary of State's requirements for use of CARES Act funding.

<u>**INSTRUCTIONS**</u>

<u>**PART ONE – CARES ACT GRANT FUNDING**</u>

The Secretary of State's Office is providing each county board of elections a block grant of an amount determined by the number of registered voters in each county, with no county receiving less than $25,000. This block grant is referred to in this Directive and future communications as the CARES grant. The CARES grant will be disbursed to each county in a single up-front, lump sum amount. Each county board of elections is required to use this funding to implement the requirements of this Directive.

This CARES grant is required by the U.S. Election Assistance Commission ("EAC") to be spent exclusively on additional costs associated with the national emergency related to coronavirus and to prevent, prepare for, and respond to COVID-19 for the 2020 federal election cycle. Thus, all costs claimed against this grant must be related to or made necessary by the COVID-19 pandemic.

Grandean Declaration, Exh. E

This funding must be used to supplement, not supplant, county funding for elections. County boards of elections may spend CARES grant funding on routine activities of the board of elections only if the need or cost for such routine activities is expected to increase due to the COVID-19 pandemic. It is the responsibility of each county board of elections to determine what costs are attributable to the COVID-19 pandemic, and county boards of elections must be prepared to share how such costs were calculated upon request.

Each county must enter into the CARES grant agreement with the Secretary of State's Office and deposit the grant payments into an interest-bearing account separate from all other funds of the board. The board of elections may use the same fund that was set up for the HAVA elections security grants in 2019. Each board must submit an expense report (stating the month's expenses and balance of funds) to CARES@OhioSoS.gov on the first business day of each month. Please return the signed grant agreement to CARES@OhioSoS.gov no later than July 13, 2020.

Each board must submit a plan generally outlining how the CARES grant will be spent, including the total amount the board plans to spend and estimated amounts per priority as established in this Directive. Each board is required to submit this plan to CARES@OhioSoS.gov no later than July 27, 2020. Boards may begin purchasing high-priority items before submission of this plan. If a board's total estimated spending is less than the amount allocated under this grant, the Secretary of State's Office may re-allocate the remaining funds to assist counties with excess estimated costs.

Each board must report the balance of all unspent and unencumbered funds to the Secretary of State's Office by December 1, 2020. Boards may continue to make outstanding payments on purchases that were obligated through a purchase order or encumbrance until December 18, 2020. All unspent funds must be returned to the Secretary of State's Office by December 18, 2020. This is necessary for the Secretary of State's Office to fulfill the EAC's requirement that all unspent funds be returned to the federal treasury by December 31, 2020.

Each board must complete and submit a quote template for items or services estimated to cost over $1,000. A board must obtain three quotes from vendors offering the required item or service and submit those quotes prior to purchasing or entering into a contract for goods or services. If fewer than three vendors offer the required item or service, a board must certify that fact to the Secretary of State's Office.

Due to current stresses on supply chains and frequent changes in availability of certain items, the requirement to obtain three quotes does not apply to purchases of personal protective equipment, cleaning and sanitizing supplies, and equipment that is only available from a single source. However, boards are required to follow county purchasing rules and are encouraged to obtain multiple quotes for these items when possible.

Boards are encouraged to use the state term schedules to identify a vendor offering a competitive price for a required item or service; however, if the board selects to use a vendor on state term schedules, the board must still provide three quotes prior to purchasing or entering into a contract when purchasing items other than those exempted from this requirement. The state term schedule is available here: https://procure.ohio.gov/proc/contractssts.asp.

## PART TWO – CARES ACT FUNDING ELECTION ADMINISTRATION PREPAREDNESS PRIORITIES

Boards of elections must consider and prioritize the following recommendations when determining how to spend their CARES Act funding in the order that they are listed below. These recommendations do not represent an exhaustive list.

### A. Ballot Quantities

Providing ballots is one of the most essential duties of a board of elections. It is unacceptable for a board to run out of ballots for an election at any time during the absentee voting period or on Election Day. It is the board of elections', director's, and deputy director's duty and responsibility to determine ballot quantities and machine allocation.

Boards must prioritize the use of the CARES Act funds to ensure that each board of elections has a sufficient amount of ballot stock to account for high voter turnout. Likewise, boards must prioritize the use of the CARES Act funds to ensure that each board of elections has enough absentee ballots and envelopes to account for a significant number of voters utilizing absentee voting.[1] Boards of elections must use the Secretary of State's Office's new design for ID envelopes, return envelopes, outgoing envelopes, and instructions once the board exhausts its current stock and has not yet ordered their absentee ballot envelopes.

### 1. Optical Scan Counties – Pre-Printed Stock

If a board of elections pre-prints the total stock of ballots to be used at a precinct on Election Day or if the board utilizes ballot marking devices or a hybrid voting systems, the board must provide at least one percent (1%) more ballots or stock for the printing of the ballot than the total number of voters registered in the precinct.[2] In determining the number of registered voters, a board does not have to include those electors who have failed to respond within 30 days to any confirmation notice.[3]

---

[1] Note that Section 32 of House Bill 197 (enacted earlier in 2020) required boards to mail provisional ballots when voters had defects in their absentee ballot applications. This was temporary law in effect only for the 2020 Presidential Primary. That provision automatically expired, reverting to permanent law going forward. *See* Election Official Manual Chapter 4, page 18.

[2] R.C. 3505.11(A).

[3] R.C. 3505.11(A).

### 2. Optical Scan Counties – On Demand Ballots

If a board chooses to provide ballots on demand at a voting location on Election Day to supplement the supply of pre-printed ballots, the board must provide for each precinct at least fifteen percent (15%) more pre-printed ballots than the total number of electors in that precinct who voted in the 2008, 2012, or 2016 general election (regular and provisional voters), whichever is higher.[4] This allotment is an increase beyond the statutory minimum of five percent (5%).[5]

In calculating the number of ballots cast in a precinct in a past election, the board should be mindful of any changes made to the precinct's boundaries and/or the number of electors assigned to the precinct since the election and adjust the number of additional ballots accordingly.

Whenever a board plans to use ballot-on-demand printers for any voting-related purpose, it must ensure that it has on hand a sufficient inventory of printers, ballot stock, and printer consumables (e.g., toner, fusers, etc.) and that each precinct is provided an adequate supply, keeping in mind the greater expected voter turnout. If precinct election officials request additional ballots, the board must provide those ballots in a timely manner so that all qualified electors who want to vote can do so.[6]

### 3. Direct Recording Election ("DRE") Voting Machine Counties

Boards of elections using DRE voting machines as their primary voting system on Election Day must deploy at least one DRE voting machine for every 175 registered voters in a precinct or voting location. The DRE's must be programmed to allow any voter assigned to the location to vote on any machine in the location. There must never be fewer than three DRE machines in any precinct or voting location.[7] The three DRE machines is a minimum – boards must allocate additional DRE's to a polling location beyond these minimums to accommodate the projected higher turnout, local contests of interest on each precinct's ballot, and recent voter registration activity.

These boards must provide sufficient supplies and equipment (e.g., paper for voter verified paper audit trail printers) so that voting may continue without undue delay resulting from missing or insufficient replacement supplies.

---

[4] R.C. 3505.11(B).
[5] R.C. 3505.11(B).
[6] R.C. 3505.11(B)(3).
[7] Chapter 4 of the Election Official Manual.

Grandean Declaration, Exh. E

A board of elections using DRE's as its primary voting system on Election Day must provide backup paper ballots for this general election. Boards must determine the minimum number of optical scan ballots to provide for each precinct by multiplying the number of ballots cast in the precinct (public count) from the 2008, 2012, or 2016 general election, whichever is higher, by fifteen percent (15%). This is the minimum number of optical scan ballots that must be provided for that precinct. The desire to vote a paper ballot will likely increase as some voters may not want to touch the DRE screen. Boards of elections may print ballots totaling more than the calculated minimum number so long as the increase is uniform across the county. Although the ballots are labeled and look the same, this fifteen percent (15%) is in addition to the quantity the board of elections determines is necessary to accommodate all provisional ballot voters at each precinct.

### 4. All Counties

The ballot quantity and DRE allocation instructions are <u>minimums</u> – boards must pre-print additional optical scan ballots beyond these minimum quantities or allocate additional DRE's to accommodate the projected higher turnout, local contests of interest on each precinct's ballot, recent voter registration activity, and the evolving health concerns. Additionally, a board must consider its local experience when deciding whether to exceed the baselines established above.

For the 2020 Presidential General Election, the board must provide provisional ballots in the quantity of at least fifteen percent (15%) more than the number of provisional ballots cast in that precinct at the 2008, 2012, or 2016 Presidential General Elections, whichever was higher.[8] Additionally, each board must provide to each precinct and/or polling location a stock of provisional ballot affirmation envelopes (containing Secretary of State Form 12-B) that is greater than the number of provisional ballots being provided for this election.

A board of elections of a county that contains a college or university should consider that attendees of the college or university might appear to vote at the precinct and polling location encompassing the college or university. The board should provide additional provisional ballots and supplies to these precincts and consider whether additional Precinct Election Officials ("PEOs") are necessary to process voters as efficiently as possible.

Boards of elections should be mindful that voter registration activity – both new registrations and changes of address – often surges immediately preceding the close of registration before an election. Boards of elections should take into consideration any increase in registration after the close of registration when determining ballot and precinct supplies minimum quantities.

---

[8] *See* Directive 2019-23. This is a minimum requirement for preparedness, not a prediction for the number of provisional ballots expected to be cast this election.

No board of elections can rely solely on printing ballots on demand to produce its stock of optical scan ballots on Election Day. A board of elections that utilizes an on demand printer must ensure that it has on-hand a sufficient supply of blank ballot stock, toner, and any other necessary supplies to print any additional ballots needed on Election Day beyond the requirements of state law and this Directive.

### B. Staffing

Boards of elections will see high voter turnout this November. Boards must prioritize CARES Act funds to ensure that each board of elections maintains an adequate amount of staff, including temporary staff, to administer the November 3, 2020 General Election, including the early voting period. Boards must prepare to hire additional staff to account for significant increases in absentee voting, voter turnout, questions from voters, early in-person voting, social distancing and cleaning protocols, and voter registration. Boards must take into consideration the amount of staff the board requires to successfully administer an election under normal circumstances and account for higher voter turnout, higher percentage of absentee ballots, and additional social distancing and cleaning protocols that will require more staffing for compliance. Boards may utilize CARES Act funds to pay existing staff overtime for the completion of duties related to the pandemic that are outside the normal scope of business.

### C. Central Count Equipment

Boards must prioritize CARES Act funds to ensure that each board of elections has an adequate number of central count scanning equipment, ensuring adequate redundancy is in place. If the board plans on renting or leasing equipment, boards of elections must ensure that the rental equipment is delivered with adequate time for acceptance and logic and accuracy testing. Boards must plan for a higher absentee voter turnout, and this plan may include the rental or purchase of additional central count equipment for higher than expected absentee turnout.

### D. Personal Protective Equipment and Cleaning Supplies

Boards of elections will hold early in-person absentee voting and in-person Election Day voting in the November 3, 2020 General Election. Boards must prioritize CARES Act funds to ensure that each board of elections has enough personal protective equipment for elections officials and cleaning supplies for the board of elections and polling locations. Boards must ensure that they have an adequate amount of personal protective equipment for board staff and precinct election officials. Likewise, boards must ensure that they have an adequate amount of cleaning supplies for the board of elections and each polling location. Boards of elections should follow the guidance the Centers for Disease Control and Prevention published and consult with their local health departments on how to mitigate the spread of COVID-19 at polling locations and any additional guidance boards will receive from the Secretary of State's Office and the Ohio Department Health.

### E. Mailing Equipment

Boards must prioritize CARES Act funds to ensure that each board of elections has the proper equipment to process the increased number of absentee ballots that are sent and received by mail. This includes, but is not limited to, ballot folders, ballot extraction equipment, postage meters and other postal equipment, electronic letter openers, ballot flatteners, and ID tag scanners. Boards should consider coordinating with other government entities, inside or outside the county, which may have additional mailing equipment for use.

### F. Precinct Election Official Recruitment and Training

Boards of elections must ensure that they recruit and train ample numbers of precinct election officials to administer the November 3, 2020 General Election and account for higher voter turnout. Boards must prioritize CARES Act funds to ensure that each board of elections has an adequate number of precinct election officials to fully staff every precinct as well as back-up precinct election officials to account for cancellations and shortages.

Ohio law provides that each county board of elections select, generally, four residents of the county in which the precinct is located to serve as precinct election officials. Counties must consider assigning more than four precinct election officials to a precinct in a high voter turnout election.[9] Boards must work with outside organizations such as service organizations, student associations, bar associations, chambers of commerce, and civic organizations to recruit precinct election officials. Boards must use social media and local media organizations to recruit precinct election officials. The Secretary of State's Office will provide resources and support to assist boards with these precinct election official recruitment efforts.

Precinct election officials are required to complete a program of instruction as prescribed by the Secretary of State in the rules, procedures, and law relating to elections.[10] New precinct election officials must complete training before participating in their first election as a precinct election officials. Any program of instruction for new precinct election officials must be scheduled within 60 days before the election in which the precinct election official will participate.[11] All precinct election official training must be complete by October 15, 2020, except for emergency trainings. As social distancing and sanitizing protocols must be included in training, all precinct election officials must receive training prior to the November 3, 2020 General Election, regardless of years of experience. Boards may offer online or virtual precinct election official training only to those experienced precinct election officials who served as a precinct election official with the current voting system and equipment.

---

[9] R.C. 3501.22. Note that in a multi-precinct polling location that uses electronic pollbooks, a board may vote to reduce the number of precinct election officials from four to two per precinct. However, the board should be cautious with reductions for this Presidential General Election.
[10] Election Official Manual Chapter 2, page 67.
[11] Election Official Manual Chapter 2, page 67; R.C. 3501.27(B).

Boards must prioritize CARES Act funds to ensure that each board of elections adequately trains all precinct election officials. Boards must implement social distancing protocols when training precinct election officials and should consider offering live online training through teleconferencing platforms such as Zoom or GoToMeeting. Boards may offer self-paced trainings through a learning management platform. If a board chooses to offer a self-paced training option, the board must be able to track the progress of each participant to ensure they complete the entire training. The board should also provide an assessment to each potential precinct election official to ensure the precinct election official understood the information provided during training.

By August 1, 2020, boards of elections must send the template survey provided with this Directive or a survey that is similar to the template survey to every precinct election official who served in the past three years or who indicated to the board their interest in serving on March 17, 2020, in addition to continuing efforts to recruit new precinct election officials. If the board knows at the beginning of October that it has not recruited enough precinct election officials to fully staff its polling locations, it must notify the Secretary of State's Office by October 2, 2020 via email intake@OhioSoS.gov. All boards must report that precinct election official training was completed by the deadline of October 15, 2020.

### G. Paper Pollbook Backups

Boards must prioritize CARES Act funds to ensure that each board of elections has a paper pollbook to serve as a backup for each electronic pollbook at each check-in station within a polling location. Boards of elections must also thoroughly test their electronic pollbooks prior to deploying the electronic pollbooks to the polling location. Precinct election officials must receive training to use paper pollbooks when they become necessary.

### H. Printed Materials

Boards must prioritize CARES Act funds to ensure that each board of elections has enough printed materials such as signage for the board of elections, early vote center, and precinct polling locations that indicates social distancing protocols, and additional information regarding the election. Boards must also prioritize CARES Act funds to issue public communications to voters regarding changes in voter locations, social distancing protocols for in-person voting, options for voting, and other information material related to conducting the November 3, 2020 General Election.

### I. Miscellaneous

The Secretary of State's Office understands that each board's election administration needs vary. If a board believes that it met the list of priority uses of the funding as set forth above and has additional needs, please email intake@OhioSoS.gov with a description of the proposal for use of funds that falls outside of this Directive.

## PART THREE – POLLING PLACE REQUIREMENTS

The Secretary of State's Office continues to consult with the Ohio Department of Health ("ODH") to monitor the spread of the COVID-19 disease and communicate public health orders and guidelines.[12] Before the March 17, 2020 Primary, the Secretary issued Directive 2020-03 to require the relocation of polling locations that were in residential senior citizen facilities. The intent was to mitigate any potential risk to identified vulnerable populations. Boards of elections must continue this policy for any election remaining in calendar year 2020. Boards may use CARES Act funds to cover costs associated with this requirement.

If a board of elections has not done so already, the board must relocate any polling site currently at a residential senior citizen facility or health care facility. Relocation must occur even if voting takes place in a separate building on the same property, such as a community center or activity room. These polling locations may not be used for the remainder of 2020. Each board of elections that is relocating polling locations must do the following:

1. Relocate registrants of each precinct to a polling location facility compliant with the Americans with Disabilities Act;

2. Update the board of elections' voter registration system with the new polling location and assign affected voters in each precinct to the proper polling location;

3. Notify by U.S. Mail each registrant affected by the change;[13]

4. Provide the updated precinct and polling location packet to the Secretary of State's Office immediately. Once the packet is sent, email the updated list to SWVRD@OhioSoS.gov;

5. Issue a press release to local media containing information regarding the new polling location(s);

6. Post a notice in a clear and conspicuous place at the previous polling location that redirects voters to the new polling location, which must be posted the day before Election Day and posted through the close of polls on Election Day;

7. Update the polling location on the board of elections website; and

8. Update the board of elections' election management system.

---

[12] On March 9, 2020, Governor DeWine signed Executive Order 2020-01D, declaring a state of emergency. The latest information on the State's response to COVID-19 is available at www.coronavirus.ohio.gov.

[13] R.C. 3501.21. If the board permanently changed the polling location earlier this year and already notified the affected registrants by U.S. Mail, it is not necessary to provide a second notice.

Additionally, each board must utilize, so far as practicable, rooms in public schools and other public buildings within its county for polling places.[14] Boards must contact public schools that are set to serve as a polling location for the November 3, 2020 General Election and deliver them the template letter provided with this Directive.

## PART FOUR – ASSISTING VOTERS IN SENIOR LIVING AND HEALTH CARE FACILITIES

Boards of elections must assist voters that are confined to a senior residential facility or health care facility with voting in the November 3, 2020 General Election.[15] Boards must contact their local health department as soon as possible, but no later than August 31, 2020, to ensure that all voters are afforded the opportunity to vote safely. Depending on the status of the current health crisis, several boards of elections will likely see nursing homes, hospitals, and similar facilities prohibit board of elections employees from entering the facility to help residents vote. While election official, resident, and patient safety is paramount, such facilities must not prevent their residents and patients from voting. At the direction of the Ohio Department of Health and in consultation with Governor DeWine, the Secretary of State's Office offers the following recommendations to help accommodate voters confined in medical facilities and nursing homes:

1. Boards must explain to the facility management that even in the midst of a public health crisis, residents and patients have a constitutional right to vote that cannot be denied. Boards should attempt to proceed under normal operations with the additional precautions of personal protective equipment and other social distancing protocols. Boards must have these conversations by August 31, 2020 to assess what the facility will allow. This will help boards assess staffing and precinct election official training needs and develop a plan well in advance of the November 3, 2020 General Election.

2. If the facility does allow the boards of elections to enter the facility to assist the voters, board staff must consider consolidating trips to these facilities in order to minimize exposure. When there are multiple facilities in the county, boards must use multiple teams of bipartisan election officials to reach these voters. Boards of elections staff members must follow guidance from health care professionals and the facility's PPE and social distancing requirements prior to entering a facility.[16]

---

[14] R.C. 3501.29. All polling places must be within the county.
[15] Boards that will administer an election on August 4, 2020 must follow the same procedures and contact these facilities as soon as possible.
[16] https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html.

3. If the facility refuses admittance and voters can complete the ballot without assistance, boards of elections may drop off the requested absentee ballots and arrange a time to collect the ballots. Board of elections employees must consult with the facility and health care professionals to be as efficient and safe as possible in returning the ballots to the board of elections.

4. If voters in the facility do need assistance marking the ballot, and board of elections staff are denied entry, then boards must ask the facility's management to identify its employees who are willing to serve as Special Precinct Election Officials to vote the facility's residents. The facility should compile this list of interested persons and return it to the board.

   a. Boards should review the registration status and party affiliation of the facility's listed employees. Boards should use this information to create the teams and verify with the facility that these individuals are permitted to serve this function during the absentee voting period and on Election Day.

   b. Once individuals are selected, the board of elections should provide a training for these Special Precinct Election Officials by October 15, 2020. The training may be limited to absentee voting and omit provisions relevant to voting in a polling location on Election Day.

   c. After the individuals have completed the training, the board of elections must have those individuals swear and sign the oath prescribed by R.C. 3501.31.

   d. The Special Precinct Election Officials may assist residents of their facility in marking their ballots in the same manner as two election officials from the board. The board must transport absentee ballots to and from the facility. This means the board of elections staff may need to wait on site until the completed ballot is returned.

If a board of elections encounters any facility that is unwilling to accommodate either of these solutions to ensuring that eligible, but confined, voters cast their ballots as prescribed, immediately notify your county prosecutor and notify the Secretary of State's Office Elections Counsel at intake@OhioSoS.gov.

## PART FIVE – CURBSIDE VOTING AND HEALTH SCREENINGS

Boards of elections must offer curbside voting to any voter who is physically unable to enter a polling location or concerned about entering a polling location. Boards should consider including signage outside the polling location setting forth the process for curbside voting and how to contact someone inside the polling location. Boards of elections should follow the guidance the Centers for Disease Control and Prevention published and consult with their local health departments on how to mitigate the spread of COVID-19 at polling locations and any additional guidance boards will receive from the Secretary of State's Office and the Ohio Department Health.

When precinct election officials are made aware of the name of a voter who is outside of the polling location and is unable to enter the polling location, the following procedures must be followed pursuant to Page 22 of the Precinct Election Official Manual and Chapter 7, Page 13 of the Election Official Manual.

Boards of elections that plan to provide a health screening to voters must always enable everyone to vote and ensure that they may vote privately, even if outside the board of elections, early vote center, or polling location. Boards that conduct health screenings must follow the following health screening procedures:

1. Consult with their county prosecutors regarding any plan for health screenings.
2. Consult with their relevant county health department to ensure the board is proceeding by best medical practices.
3. Ensure that a bipartisan team of election officials is involved in every step of assisting voters and handling ballots that may be outside of the board of elections, early vote center, or polling location. Boards must consider this additional potential operation in their precinct election official recruitment and staffing numbers.
4. Send a copy of their health screening plan to our Office via intake@OhioSoS.gov.

## PART SIX– CURING ABSENTEE BALLOT APPLICATIONS AND BALLOTS

If a board of elections receives an absentee ballot application that does not contain all of the required information, the board must promptly notify the voter of the additional information required to be provided by the voter to complete the application.[17] Boards must utilize telephone numbers and email addresses to complete this process as quickly as possible. However, if electronic contact is not possible, boards must attempt to correct the missing information by mail. Boards should ultimately retain a completed application at the board office.

---

[17] *See* Directive 2020-07.

Boards must utilize telephone numbers and email addresses, in addition to sending SOS Form 11-S, to notify voters that have a deficiency on their ID envelope as quickly as possible. The Secretary of State's Office will issue a Directive regarding the unofficial and official canvass procedures prior to the November 3, 2020 General Election. That Directive will include additional information regarding the cure period for absentee and provisional ballots.

If you have any questions regarding this Directive, please contact the Secretary of State's Office at (614) 728-8789.

Yours in service,

Frank LaRose
Ohio Secretary of State



tools established above is updated. Any change to a voter's registration information or absentee ballot status must be reflected in the lookup tool each business day. Any changes to the location of a polling location or to a sample ballot must be reflected promptly in the lookup tool.

Boards of elections must make the necessary arrangements to ensure that the IT infrastructure supporting its website and these lookup tools, as well as the internet "path" to them, are sufficiently robust and stable to support the traffic during peak election periods. Boards of elections should procure the appropriate personnel and resources (e.g., county Automatic Data Processing board personnel and other county or elections IT staff, county voter registration system vendor, local internet service provider personnel, etc.) to ensure that the board's online presence is scaled and supported appropriately to meet presidential-year activity levels.

The voter information discussed here is derived from public records as defined in state law. However, each board of elections must take all necessary steps to ensure that industry-standard security protocols for its website and lookup tools are implemented and followed. Boards should procure the appropriate resources (see above) to do so.

Each board of elections' website must have these baseline online voter information access tools with the end user – the voter – in mind. Each board needs to evaluate the following:

☐ Are users easily able to find the correct site when using online search engines (e.g., Google, Yahoo!, etc.);

☐ Are users easily able to navigate within the board of elections' own website (e.g., are links clearly labeled, is the content organized, and does it use plain language whenever possible); and

☐ Is the information easily displayed using various platforms (i.e., PC vs. mobile; iPhone vs. Android; Internet Explorer vs. Chrome)?

Boards of elections must work to ensure that its website and these baseline online voter information access tools can be accessed effectively and used by voters with disabilities.

Grandean Declaration, Exh. F