IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, et al.** | : | |
| | : | |
| Plaintiffs, | : | Case No. 20CV003843 |
| | : | |
| v. | : | Judge Michael Watson |
| | : | |
| **OHIO SECRETARY OF STATE FRANK LAROSE,** | : | |
| | : | |
| Defendant. | : | |

### DECLARATION OF DAVID PAYNE

I, David Payne, hereby state that I am over the age of eighteen years and am competent to testify to the following on the basis of personal, firsthand knowledge:

1. I am the Deputy Director of the Franklin County Board of Elections ("the Board"). I have served in this role since April 2015. Prior to serving in this role, I served as Chief of Staff for the Ohio Department of Administrative Services.

2. As Deputy Director of the Franklin County Board of Elections, I am responsible for overseeing the day-to-day operations and statutory duties required of the Board. Those day-to-day operations include supervising the staff who reviews and processes applications for absentee ballots and absentee ballot identification envelopes. I am also responsible for hiring, training, and overseeing all Board staff and ensuring that the Board is sufficiently staffed during the busy time period leading up to an election.

3. Based on my years of employment at the Board and my professional training, I have first-hand knowledge of the responsibilities and tasks involved with 1) reviewing and processing both applications for absentee ballots and absentee ballot identification envelopes, 2) the responsibilities of the Board and its staff in processing provisional ballots, and 3) and the responsibilities of the Board and its staff in preparing for and conducting the official canvass of an election.

4. A staff member is assigned to review each application for an absentee ballot by mail and absentee ballot identification envelope to determine whether it contains all of the required information and signature of the elector.

5. The staff member compares the elector's signature on the document to the elector's official signature that is contained in the Board's voter records.

1

Exhibit C, Declaration of David Payne

6. If the staff member determines that an application for an absentee ballot contains all of the required information and the elector's signature, the staff member flags the application as accepted, and the Board issues an absentee ballot to the elector.

7. If the staff member reviewing an application for an absentee ballot cannot determine whether the elector's signature matches what is contained in the Board's voter records, the staff places the application on temporary hold. A supervisor or manager then reviews it. If the supervisor or manager cannot determine whether the elector's signature matches what is contained in the Board's voter records, the manager and supervisor, as a bipartisan team, make the determination.

8. If the bipartisan team determines that the signature does not match what is contained in the Board's voter records, the Board rejects the application. The Board then sends letter to the elector via U.S. Mail, advising the elector to correct his or her signature.

9. Moving to absentee ballots, if the staff member determines that an absentee ballot identification envelope contains all of the required information and the elector's signature, the staff member flags the identification envelope as accepted, and the Board processes the absentee ballot.

10. If the staff member reviewing an absentee ballot identification envelope cannot determine whether the elector's signature matches what is contained in the Board's voter records, the staff member places it on hold. A supervisor or manager then reviews it. If the supervisor or manager cannot determine whether the elector's signature matches what is contained in the Board's voter records, the manager and supervisor, as a bipartisan team, make the determination.

11. If the bipartisan team determine that the signature does not match what is contained in the Board's voter records, the Board mails a Secretary of State Form 11-S to the voter, along with a pre-addressed return envelope. The Form 11-S informs the elector that his or her absentee ballot identification envelope is missing a required piece of information, such as a signature, or the required information does not match the information in the county's voter registration system and that the elector can cure the deficiency by completing and the form and returning it to the Board.

12. For the 2020 Presidential General Election, the Secretary of State instructed the Board to contact an elector via telephone or email to inform the elector of any deficiencies and to give the elector timely instructions on how to cure them. In addition to calling or emailing an elector, the Board must send the Form 11-S to the elector via U.S. Mail.

13. All staff members who review signatures on absentee ballot applications and absentee ballots are trained and directed to presume that all signatures are valid and to review all signatures liberally, erring on the side of accepting a signature and issuing absentee ballots to eligible electors.

14. The Board has a secure drop box that is available 24/7. A voter can use the drop box to return a voter registration form, absentee ballot application, voted absentee ballot, or a completed Form 11-S without entering the board of elections' office.

15. The Board has an absentee ballot tracking application on its website called Ballot Trax. Using Ballot Trax, a voter may check the status of his/her absentee ballot application and absentee ballot.

16. Through Ballot Trax a voter can receive critical status updates on his or her absentee ballot application and absentee ballot via email, text message, or voice message.

17. The Board updates Ballot Trax every 24 hours, starting the day that the board begins to process absentee ballot applications for an upcoming election. For the 2020 Presidential General Election, the Board began processing applications and updating Ballot Trax daily during the first week of July 2020.

18. I am familiar with the absentee ballot application and the absentee ballot identification envelope that was submitted by Plaintiff George Mangeni for the 2020 Presidential Primary Election.

19. The Board received an absentee ballot application that contained Plaintiff Mangeni's information and the printed name "GEORGE," in the signature field. "Absentee Ballot Application," attached hereto as Exhibit A.

20. The Board issued an absentee ballot to Plaintiff Mangeni.

21. The Board received an absentee ballot identification envelope, containing Plaintiff Mangeni's returned absentee ballot, on April 24, 2020. The absentee ballot identification envelope contained the printed name "GEORGE," in the signature field. "Absentee Ballot Identification Envelope," attached hereto as Exhibit B.

22. The official signature for Plaintiff Mangeni in the Board's voter records is taken from his provisional ballot affirmation form, dated November 7, 2017. The provisional ballot affirmation form is the most-recent voter registration form of Plaintiff Mangeni. "Provisional Ballot Affirmation," attached here to as Exhibit C.

23. The Board rejected Plaintiff Mangeni's absentee ballot because the signature on his absentee ballot neither matched, nor resembled in any manner, his official signature.

24. The Board mailed a Form 11-S to Plaintiff Mangeni, along with a pre-addressed return envelope, at 1:08 p.m. on April 27, 2020. The Form 11-S advised Plaintiff Mangeni that his absentee ballot identification envelope did not contain a matching signature.

25. Plaintiff Mangeni had until May 5, 2020 to submit a completed Form 11-S to the Board and cure his absentee ballot identification envelope.

Exhibit C, Declaration of David Payne

26. The Board never received a completed Form 11-S from Plaintiff Mangeni.

27. The Board has not received an application for an absentee ballot from Plaintiff Mangeni for the 2020 Presidential General Election.

28. The Board has not received a voter registration or change form with an updated signature from Plaintiff Mangeni.

29. The Board flags only those voters who submit a complete and accepted application for an absentee ballot as provisional voters in the pollbooks.

30. For the 2020 Presidential General Election, a voter who is concerned about entering, or is physically unable to enter, a polling location may cast a ballot curbside at his/her polling location.

31. The Board must complete many tasks between Election Day and the start of the official canvass of the election.

32. After the close of polls on Election Night, a bipartisan team of election officials from each polling location must transport all ballots and supplies from the polling location to the board of elections.

33. The Board conducts two canvasses of every election: the unofficial canvass and the official canvass. The unofficial canvass of the election begins immediately after the close of polls includes all ballots that the board of elections has determined to be eligible to be counted on Election Night—i.e., all regular ballots cast at polling locations, any back-up paper ballots, and all valid absentee ballots received before the close of polls. The official canvass is the final tally of all ballots cast in the election and includes all valid provisional ballots and valid absentee ballots received after the close of polls on Election Day. *See* R.C. 3505.32.

34. The counting of ballots during the unofficial canvass is continuous, so, in a Presidential General Election, the unofficial canvass is likely to continue until the next morning.

35. Immediately following the completion of the unofficial canvass, the Board begins to process the provisional ballots cast in the election. The Board must verify the eligibility of persons who cast provisional ballots and the validity of the required provisional voter affirmation statements in preparation for the official canvass of the election.

36. In past Presidential General Elections, there have been approximately twenty thousand provisional ballots cast in Franklin County.

37. Following a Presidential General Election, the Board assigns approximately twenty-six staff members to process provisional ballot affirmation statements. These staff members typically work seven days a week, eight hours a day (and sometimes more) for two weeks to process all of the provisional ballots cast in a Presidential General Election. Generally,

Exhibit C, Declaration of David Payne

each bipartisan team is able to review 100 provisional ballot affirmation statements per day.

38. Because it takes two weeks to process all of the provisional ballot affirmation statements, the Board typically does not begin its official canvass of a Presidential General Election until the fifteenth day following the election, which is the latest date that the Board may start the canvass. *See* R.C. 3505.32.

39. The twenty-six staff members work in bipartisan teams of two people to review each provisional ballot affirmation statement. The team must verify that the provisional ballot affirmation statement contains the five required items: the voter's printed name; the voter's valid signature; the voter's date of birth; the voter's current address; and an acceptable form of identification. *See* Secretary of State Directive 2019-29, attached hereto as Exhibit D, p. 6-9.

40. The team then uses the county's voter registration database or the Statewide Voter Registration Database to verify the identity of the provisional voter and information provided by the voter. *See id.*, pp. 6-10-6-11.

41. If the team cannot verify the identity of the voter based on the information provided on the provisional ballot affirmation envelope, they must conduct a wildcard search of the county voter registration database, a voter query of the Statewide Voter Registration Database using "Search by Driver License Number," and at least one voter query of the Statewide Voter Registration Database by entering as much or as little information as is available using "Search by Name." *See id.*

42. Of the twenty-six staff members assigned to review provisional ballot affirmation statements, two are assigned to the county-to-county team. The county-to-county team works with other county boards of elections to process provisional ballots. For example, if a provisional voter is registered to vote in another county, the county-to-county team must contact the other county board of elections to confirm that the voter did not cast a ballot in the other county. Likewise, if an elector of Franklin County casts a provisional ballot in another county, the board of elections from the other county contacts the county-to-county team to confirm that the voter did not cast a ballot in Franklin County. *See id.*, p. 6-13.

43. Each bipartisan team groups provisional ballots by category to be voted upon by the Board, e.g., ballots eligible to be counted, ballots missing a printed name, ballots missing a signature, etc.

44. A provisional voter who failed to provide a form of identification on their provisional ballot affirmation statement or who was challenged may appear at the Board office during the seven days following the election to provide identification or information to resolve the challenge. R.C. 3505.183(B)(2).

Exhibit C, Declaration of David Payne

45. During the ten days following Election Day, the Board also must process late-received absentee ballots.

46. If the Board receives an absentee ballot identification envelope that is missing required information between Saturday, October 31 and Monday, November 9, 2020, it must issue a Form 11-S to the voter on the same day that it receives the absentee ballot. Secretary of State Directive 2019-28, attached hereto as Exhibit E, p. 5-31. The Board also must call or email the voter.

47. If a voter requests assistance to complete a Form 11-S, the Board must send a bipartisan team of employees to provide assistance to the voter. *Id.*, p. 5-32, citing *Ray v. Franklin Cty. Bd. of Elections*, S.D.Ohio No. 2:08-cv-1086, 2008 U.S. Dist. LEXIS 116433 (Nov. 17, 2008).

48. The Board must receive a completed 11-S by November 10, 2010 (the 7th day after the election) or by November 13, 2020 (the 10th day after the election) if it is post-marked by November 10, 2020 (the 7th day after the election) in order for the Form 11-S to cure an absentee ballot identification envelope. *Id.*, p. 5-33.

49. Board staff must review any completed Form 11-S in the same manner it reviews an absentee ballot identification envelope. *Id.*, pp. 5-33-5-35.

50. The Board is permitted to start the official canvass no earlier than November 14, 2020 (the 11th day after the election) and must start the canvass no later than November 18, 2020 (the 15th day after the election). The Board must complete the official canvass and certify the results to the election no later than November 24, 2020 (the 21st day after the election). R.C. 3505.32.

51. Prior to starting the official canvass, Board needs to examine all of the records from the electronic poll books, back-up poll books, and tally sheets, and compare the information contained in those documents to the summary statements prepared by the precinct election officials. It must record and reconcile any error.

52. The board must conduct this review for each of the 884 precincts in Franklin County.

53. Prior to the official canvass, the Board must test its tabulating equipment, both before and after tabulating ballots, to verify that the tabulating equipment is producing an accurate count. R.C. 3506.14(B).

54. During the processing of provisional ballots and late-received absentee ballots, Board must update its Central Ballot Tracking System (for UOCAVA voters) and its online ballot tracking system (for regular voters).

55. Following the 2020 Presidential General Election and prior to the official canvass, the Board expects to receive and respond to calls and emails from voters regarding the status of their ballots and questions regarding the election.

56. Following the 2020 Presidential General Election and prior to the official canvass, the Board expects to receive and must respond to requests for public records.

57. Following the 2020 Presidential General Election and prior to the official canvass, the Board must securely retrieve all voting equipment deployed to polling locations on Election Day.

58. Because of all of the tasks and responsibilities of the Board leading up to the official canvass, the Board needs a finite end to the cure period and enough time between the end of the cure period and the start of the official canvass to prepare for the official canvass.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___9/11/2020___.

_David R. Payne_
DAVID PAYNE

Exhibit C, Declaration of David Payne

Form No. 11-A Prescribed by the Secretary of State (08-17)

## Absentee Ballot Application

print clearly

R.C. 3509.03

| | | | | | |
|---|---|---|---|---|---|
| **Voter Name** Required | **1** | First | GEORGE | Middle | |
| | | Last | MANGENI | Suffix | |

**Date of Birth** Required — **2** — Date of Birth *(do not write today's date here)* _____ Redacted

**Address at Which you are Registered to Vote** Required — **3** — Street Address *(no P.O. boxes)* 367 SCANDIA ST    County Franklin
City/Village BLACKLICK    ZIP 43004

**Mailing Address** *Required only if you wish to have your ballot mailed to a different address than the address at which you're registered to vote.* — **4** — Street Address *(or P.O. box)* _____
City/Village _____
State _____ ZIP _____

**Identification** Required *You must provide ONE of the following* — **5**
- [x] Your Ohio driver's license number *(2 letters followed by 6 numbers)* _____ Redacted OR
- [ ] Last four digits of your Social Security number _____ OR
- [ ] Copy of a current and valid photo identification, military identification, or a current (within the last 12 months) utility bill, bank statement, government check, paycheck or other government document (other than a notice of voter registration mailed by a board of elections) that contains your name and current address.

**Election** Required *You must complete a separate application for each election.* — **6** — Date of Election *(do not write today's date here)* _____ 3/17/2020
- [ ] General Election    [ ] Special Election
- [x] Primary Election   For a PARTISAN primary election only, you must choose the type of ballot:
   - [x] Political party ballot   Name of Political Party DEMOCRATIC    [ ] Issues only ballot

**Affirmation** Required — **7**
- I wish to have an absentee ballot mailed to me at the address listed above.
- I understand this request must be received by my board of elections no later than noon on the Saturday before Election Day if by mail or by 2 p.m. the day before the election if in person.
- I understand that if an absentee ballot is mailed to me and I change my mind and go to my polling place to vote on Election Day, I will be required to vote a provisional ballot that cannot be counted until at least 11 days after Election Day.
- I understand that, if I do not provide the required information, my application cannot be processed.
- I hereby declare, under penalty of election falsification, that I am a qualified elector and the statements above are true.

Signature X   *GEORGE*

Today's Date _____ 4/6/2020

To assist the board of election in contacting you in a timely manner if your application is incomplete, please provide the following information.
Telephone Number _____   E-mail Address _____

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE.**

Payne Declaration, Exh. A

Form No 12 A Prescribed by Secretary of State (03-18)

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE**

**FRANKLIN COUNTY BOARD OF ELECTIONS**

ABSENTEE BALLOT CONTAINED HEREIN WAS MAILED TO:

413150042115

GEORGE W MANGENI
367 SCANDIA ST
BLACKLICK OH 43004-8220

IDENTIFICATION ENVELOPE
STATEMENT OF VOTER
R C 3509 04, 3511 05

I, GEORGE MANGENI (Printed Name of Voter), declare under penalty of election falsification that the within ballot or ballots contained no voting marks of any kind when I received them, and that I caused the ballot or ballots to be marked, enclosed in the identification envelope, and sealed in the envelope

I am a qualified elector of the state and my voting residence in Ohio is
367 SCANDIA ST (Street Address)
BLACKLICK OH 43004 (City or Village and Zip Code)

Date of Birth: Redacted (month day year) and ONE of the following:
☒ Your Ohio driver's license number Redacted (begins with two letters followed by six numbers), or
☐ The last four digits of your Social Security number _____, or
☐ In lieu of providing either of the above numbers, I am enclosing a COPY of one of the following in the return (outside) envelope in which this identification envelope will be mailed a current and valid photo identification, a military identification, or a current (within the last 12 months) utility bill, bank statement, government check, paycheck, or other government document (other than a notice of voter registration mailed by a board of elections) that shows my name and current address

Election at which I am voting (check which election, and if a primary election, specify which ballot you have returned):

Check ONLY one.

1. ☒ Primary Election (for primary elections, select type of ballot)
   ☒ Party DEM    ☐ Nonpartisan or issues only
   046
   BLACK ☐ General Election _____ (year)
   010324 ☐ Special Election _____ (month and year)
   1494186

I hereby declare, under penalty of election falsification, that the statements above are complete and true to the best of my knowledge and belief.

x GEORGE    4/22/2020
SIGNATURE OF VOTER    DATE SIGNED

Payne Declaration, Exh. B

**Provisional Ballot Affirmation**
RC. 3503.16; 3505.18; 181; 182; 183

| | | | |
|---|---|---|---|
| **Full Name** Required Print clearly. | 1 | First name: GEORGE  Last name: MANGENI | Middle Name: Suffix: |
| **Date of Birth** Required | 2 | Date of Birth: [Redacted] | M M D D Y Y Y Y |
| **Current Ohio address** Required | 3 | Street address (not P.O. Box): 367 SCANDIA ST  City/Village: BLACKLICK | ZIP: 43004 |
| **Former address** Not required. If you do not provide your former address it will not cause your ballot to be rejected. | 4 | Have you moved without updating your voter registration? YES ☐ NO ☒  Street address (not P.O. Box):  City/Village: | State: ZIP: |

**Identification Required**

Do ONE of the following:
- Write your full Ohio driver's license or state identification card number, or
- Write the last four digits of your Social Security number, or
- Check the box next to the form of identification you showed to the precinct election official.

5.
- Your Ohio driver's license number or state identification card number: ☐☐☐☐☐☐☐☐
- Last four digits of your Social Security number: Redacted
- Military identification card ☐
- Current (within the last 12 months) utility bill, bank statement, government check, paycheck or other government document, other than a notice of voter registration mailed by a board of elections, that contains your name and current address ☐
- Photo identification that was issued by the United States government or the State of Ohio (or your former address if the identification card), and that has an ... ☐

```
17011228PROV        150042115
MANGENI GEORGE W    KHGANTNE
367 SCANDIA ST      BM
BLACKLICK OH 43004
Redacted   Redacted
```

**Affirmation Required**

6. Name: MANGENI, GEORGE W
County: Franklin   Party:
Result: 1   APPROVED PROVISIONAL BALLOT (VOTE)

I hereby declare, under penalty of election falsification, that the above statements are true and correct to the best of my knowledge and belief.

Signature X: [signature]

Today's date: 1 1 / 0 7 / 2 0 1 7

WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE.

Failure by the precinct election official to complete this section will not affect whether or not this provisional ballot is counted.

LID: 9001   Precinct Identifier: COLS 46-F01
Ballot Style: 285   Party or Issues Only:
Machine Code:
PEO's Printed Name & Date: Stephanie D. Williams 11-7-17

For Office Use Only
9001
285
COLS 46 F01

Payne Declaration, Exh. C



A board must complete the counting of provisional ballots and the official canvass no later than the 21st day after the election.[35]

## MANDATORY STEP-BY-STEP PROCESS FOR DETERMINING ELIGIBILITY

Each board is required to follow the step-by-step instructions outlined below to determine the eligibility of a provisional ballot to be counted.

### Section 1.04    Step-by-Step Process for Determining Eligibility

### STEP 1: DETERMINE WHETHER THE AFFIRMATION STATEMENT ON THE PROVISIONAL BALLOT ENVELOPE CONTAINS EACH OF THE FOLLOWING FIVE ITEMS:

1. Voter's printed name;
2. Voter's valid signature;
3. Voter's date of birth;
4. Voter's current address; and
5. Voter's identification.

   ☐ If the affirmation statement contains all five of the required items, proceed to Step 2.

   ☐ If the affirmation statement does not contain both the voter's printed name and valid signature, then the board must reject the provisional ballot.[36]

   ☐ If the affirmation statement does not contain the voter's date of birth or it does not fall into the exception below, then the board must reject the provisional ballot.[37]

   **Exception:** If the affirmation statement contains the voter's date of birth but the month and day are different from the month and day in the Statewide Voter Registration Database, the board must reject the provisional ballot unless 1) the voter's date of birth in the database is 1/1/1800; or 2) the board of elections finds by a vote of at least three of its members that the voter has

---

[35] R.C. 3505.32(A).
[36] R.C. 3505.183(B)(4)(a)(iii).
[37] R.C. 3505.183(B)(4)(a)(ix).

Payne Declaration, Exh. D



met all of the other requirements of division (B)(3) of R.C. 3505.183.[38] If the ballot falls into this exception, proceed to Step 2.

## STEP 2: DETERMINE WHETHER THE PROVISIONAL VOTER INDICATED ON THE AFFIRMATION STATEMENT SHOWED AN ACCEPTABLE FORM OF IDENTIFICATION TO THE PRECINCT ELECTION OFFICIAL OR WHETHER THE PROVISIONAL VOTER PROVIDED AT LEAST ONE OF THE FOLLOWING ON THE AFFIRMATION STATEMENT: THE LAST FOUR DIGITS OF THE VOTER'S SOCIAL SECURITY NUMBER, THE VOTER'S DRIVER LICENSE NUMBER, OR STATE IDENTIFICATION CARD NUMBER.

- ☐ If the voter indicated on the affirmation statement that they showed the precinct election official one of the acceptable forms of identification, proceed to Step 3.[39]

- ☐ If the voter provided identification on the affirmation statement, and the number (or, if a driver license or state identification card number, the combination of letters and numbers) provided is not different from the number that is contained in the Statewide Voter Registration Database, proceed to Step 3.[40]

- ☐ If the voter provided identification on the affirmation statement but that identification is different from what is contained in the Statewide Voter Registration Database (i.e., the number or, if a driver license or state identification card number, the combination of letters and numbers, provided is different), the board must reject the provisional ballot.[41]

- ☐ If the voter did not provide identification on the affirmation statement or did not indicate that they showed an acceptable form of identification to the precinct election official but returned to board of elections within seven days after the election and provided one of the acceptable forms of voter identification, proceed to Step 3.[42]

- ☐ If the voter did not provide identification on the provisional ballot affirmation, did not indicate on the affirmation statement that they showed the precinct election official an acceptable form of identification, and did not return to the board

---

[38] R.C. 3505.183(B)(4)(a)(ix).
[39] R.C. 3505.181(B)(6).
[40] R.C. 3505.183(B)(3)(d).
[41] R.C. 3505.183(B)(4)(a)(viii).
[42] R.C. 3505.183(B)(3)(g).



within the seven days after the election to remedy the missing item, the board must reject the provisional ballot.[43]

## STEP 3: DETERMINE WHETHER THE BOARD CAN VERIFY THE IDENTITY OF THE VOTER BASED ON THE INFORMATION PROVIDED ON THE PROVISIONAL BALLOT AFFIRMATION OR PROVIDED BY THE VOTER WITHIN THE SEVEN-DAY PERIOD.

- ☐ If the board can verify the identity of the voter based upon the information provided on the provisional ballot affirmation and/or provided by the voter within seven days of the election, proceed to Step 4.

- ☐ If the board cannot verify the identity of the voter based upon the information provided on the provisional ballot affirmation and/or the information provided by the voter within seven days of the election, the board must reject the provisional ballot.[44]

  **Note:** To verify identity, the board must 1) conduct at least one "wildcard" search of the county's local voter registration database, if available, 2) conduct a voter query of the Statewide Voter Registration Database using 'Search by Driver License Number' and 3) conduct at least one voter query of the Statewide Voter Registration Database by entering as much or as little information as is available using 'Search by Name.' Once a board has successfully identified a voter with one search, it is not necessary to conduct the additional queries.

## STEP 4: DETERMINE WHETHER THE VOTER IS A REGISTERED VOTER ANYWHERE IN THE STATE OF OHIO AT LEAST 30 DAYS BEFORE THE ELECTION.

- ☐ If the voter was registered to vote anywhere in the State of Ohio at least 30 days before the election, proceed to Step 5.

- ☐ If the voter was not registered to vote anywhere in the State of Ohio at least 30 days before the election, then the board must reject the provisional ballot.[45]

---

[43] R.C. 3505.183(B)(4)(a)(viii).
[44] R.C. 3505.183(B)(4)(b)(i); *State ex rel. Skaggs v. Brunner* (2008), 120 Ohio St. 3d 506.
[45] Ohio Constitution Article V, Section 1; R.C. 3505.183(B)(4)(a)(i).

Payne Declaration, Exh. D



## STEP 5: DETERMINE WHETHER THE VOTER IS A RESIDENT OF THE COUNTY AND PRECINCT IN WHICH THE VOTER OFFERS TO VOTE.[46]

- ☐ If the voter is a resident of the county and precinct in which the provisional ballot was cast, proceed to Step 6.

- ☐ If the voter moved and provided a new address within the precinct on the affirmation statement, then the voter is considered a resident of the new precinct and the board must proceed to Step 6.

- ☐ If the voter cast the provisional ballot in the wrong precinct, but in the correct polling location, including the board of elections office, and a precinct election official did not complete and attach Form 12-D to the provisional ballot envelope, the board must remake and count the provisional ballot for only those contests for which the voter was otherwise eligible to vote.[47]

- ☐ If the voter cast the provisional ballot in the wrong precinct, but in the correct polling location, including the board of elections office, and a precinct election official did complete and attach Form 12-D, but the board verified that the precinct to which the precinct election official directed the voter was the incorrect precinct, the board must remake and count the provisional ballot for only those contests for which the voter was otherwise eligible to vote.

- ☐ If the voter cast the provisional ballot in the wrong precinct, but correct polling location, including the board of elections office, and 1) a precinct election official completed Form 12-D and 2) the board verified that the precinct to which the precinct election official directed the voter was the correct precinct, the board must reject the provisional ballot.[48]

- ☐ If the voter cast the provisional ballot in the wrong precinct and wrong polling location the board must reject the provisional ballot.[49]

---

[46] R.C. 3503.01(A).
[47] R.C. 3505.183(D)(1).
[48] R.C. 3505.183(D)(1).
[49] R.C. 3505.183(D)(3).

Payne Declaration, Exh. D



### STEP 6: DETERMINE WHETHER THE VOTER ALREADY REQUESTED AND CAST A BALLOT IN THE ELECTION.

- ☐ If the voter has not cast another ballot, proceed to Step 7.
- ☐ If the voter has requested and cast an absentee ballot but either of the following exceptions apply, proceed to Step 7.

    **Exception 1**: The board of elections shall count the provisional ballot, instead of the absentee ballot, if the board determines that the absentee ballot is invalid because the elector's signature on the absentee voter's identification envelope does not match the signature on file with the board of elections, and the elector cast the provisional in the voter's precinct on Election Day.[50] If the ballot meets this exception, proceed to Step 7.

    **Exception 2:** The board of elections does not receive the voter's absentee ballot by the 10th day following the election, and the elector cast the provisional in the voter's precinct on Election Day.[51] If the ballot meets this exception, proceed to Step 7.

- ☐ If the voter has cast another ballot, or requested and cast an absentee ballot and the exceptions above do not apply, the board must reject the provisional ballot.

### STEP 7: IF YOU HAVE COMPLETED STEPS 1 THROUGH 6 AND DETERMINED THAT THE PROVISIONAL BALLOT SHOULD BE REJECTED, YOU MUST CONSIDER AND APPLY THE CONSENT DECREE ISSUED BY THE FEDERAL COURT IN NORTHEAST OHIO COALITION FOR THE HOMELESS V. BRUNNER, S.D. OHIO NO. 2:06-CV-896, (NEOCH), WHICH IS COPIED IN FULL IN SECTION 1.07 OF THIS CHAPTER.

---

[50] R.C. 3509.09(C)(2).
[51] R.C. 3509.09(C)(3).



database, and the voter completes and returns Form 11-S with the same information provided on the identification envelope, the board must review its voter registration records – including original paper records if necessary – prior to the 10th day before the election to determine whether the mismatch is a result of data entry error.

Whenever a voter has requested the voter's absentee ballot to be mailed by the board of elections to an address other than the address at which the voter is registered to vote, and the voter's absentee ballot identification envelope is "defective," the board must issue Form 11-S to both the address at which the voter is registered to vote and the address to which the voter had requested the voter's absentee ballot be mailed by the board.[95]

Boards of elections must adhere to the following schedule when reviewing completed absentee ballot identification envelopes and issuing Form 11-S to absentee voters:

- ☐ Form 11-S must be issued not later than two business days after a "defective" absentee ballot identification envelope is received by the board from the start of absentee voting through the third Saturday prior to an election;

- ☐ Form 11-S must be issued not later than one calendar day after a "defective" absentee ballot identification envelope is received by the board of elections between the third Monday and last Friday prior to an election; and

- ☐ Form 11-S must be issued on the same day that a "defective" absentee ballot identification envelope is received by the board of elections between the Saturday prior to an election and through the 6th day following an election.

For purposes of this section, "issued" means that Form 11-S has been presented by the board of elections to the USPS, with accurate first-class postage affixed by the board of elections necessary for first-class delivery.

It is not necessary for a board to provide Form 11-S to an absentee voter whose ballot was received by the board of elections after 7:30 p.m. on Election Day and is postmarked later than the day prior to the election.

Once an absentee voter has completed Form 11-S, the voter may return it to the board of elections in person, by mail or other private delivery service (e.g., UPS, FedEx, etc.), or by any person authorized by state law to return the voter's absentee ballot.[96]

---

[95] Regardless of whether the voter requested assistance in casting the absentee ballot, if a voter requests assistance to supplement the voter's identification envelope the board of elections must send two employees, not of the same political party, to the voter to provide assistance. *Ray v. Franklin County Board of Elections* Case No. 2:08-CV-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008).
[96] R.C. 3509.05(A).



In the case of voters with disabilities or UOCAVA voters, all county boards of elections must provide reasonable accommodations, as follows:

- ☐ Voters with Disabilities – Regardless of whether the voter requested assistance in casting the absentee ballot, if a voter requests assistance to supplement the voter's identification envelope, the board of elections must send board employees, not of the same political party, to the voter to provide assistance.[97]
- ☐ UOCAVA Voters – A UOCAVA voter's board of elections must provide notice to the voter in the same manner in which the voter requested transmission of the ballot by the board to the voter (i.e., by email, facsimile, or by mail, if application was made by mail or in person).

A completed Form 11-S must be received by the board of elections by the 7th day after an election,[98] or be post-marked by the 7th day after the election and received by the board of elections by the 10th day after the election, in order to cure the voter's defective absentee ballot identification envelope and have the ballot included in the official canvass, which may begin on the 11th day following the election.

## Section 1.07   Mandatory Step-by-Step Process for Counting Absentee Ballots

### STEP 1: DETERMINE WHETHER THE BALLOT WAS TIMELY SUBMITTED:

An absentee ballot returned in person to the board of elections office must be delivered by 7:30 p.m. on Election Day.[99] The ballot also may be returned to the board's designated location for in-person absentee voting at any time during in-person absentee voting.

An absentee ballot returned via mail must be postmarked no later than the day before Election Day and received at the board of elections office no later than the 10th day after Election Day. If the absentee ballot returned via mail does not have a postmark, it must be received at the board of elections office no later than 7:30 p.m. on Election Day.

---

[97] *Ray v. Franklin County Board of Elections* Case No. 2:08-CV-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008).
[98] R.C. 3509.06(D)(2)(b).
[99] R.C. 3509.05.

Payne Declaration, Exh. E



A postmark does not include mail sent using a postage evidencing system, including a postage meter or postage from private companies that dispense postage through the internet (e.g., Stamps.com), known as the PC Postage program.[100]

Note that a postmark is not required in order for a UOCAVA ballot to be valid. The board must count an otherwise valid UOCAVA ballot regardless of whether it contains a timely postmark, a late postmark, or no postmark.[101]

☐ If the absentee ballot was not timely submitted, the board must reject the absentee ballot.[102]

☐ If the absentee ballot was timely submitted, proceed to Step 2.

## STEP 2: DETERMINE WHETHER THE VOTER HAS PROVIDED THE MINIMUM REQUIRED INFORMATION:

In order for an identification envelope to be opened and the absentee ballot to be counted, the absentee voter must provide sufficient information on the absentee ballot ID envelope to identify the voter and to determine that the voter was eligible to cast the ballot.[103]

At a minimum, an absentee voter must provide:[104]

1. **Name;**[105]
2. **Signature;**[106] and
3. **Proper Identification:**[107]
   - The voter's driver license number;[108]
   - The last four digits of the voter's Social Security number;[109] or
   - A copy of a current and valid photo identification, a military identification, or a current (within the last 12 months) utility bill, bank statement, government check, paycheck, or other government document (other than a notice of voter registration mailed by a board of elections) that shows the voter's name and address.[110]

---

[100] R.C. 3509.05(B)(2). See also 39 CFR 501.01.
[101] R.C. 3511.11(C).
[102] R.C. 3509.07.
[103] R.C. 3509.07(C).
[104] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D), R.C. 3509.07(A).
[105] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D)(3)(a)(i).
[106] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D)(3)(a)(iv).
[107] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D)(3)(a)(v).
[108] R.C. 3509.06(D)(3)(a)(v)(I).
[109] R.C. 3509.06(D)(3)(a)(v)(I ).
[110] R.C. 3509.06(D)(3)(a)(v)(III).

Payne Declaration, Exh. E



- It is important to note that the board of elections is required to pre-print the voter's name as it appears in the voter registration record onto the absentee ballot identification envelope. See, paragraph E.1. of Section 1.05, above. Occasionally, a voter may strike through and write a name on the identification envelope that is different from the name preprinted by the board using the voter's name as it appears in the voter registration record. Ohio law does not permit an absentee ballot identification envelope to be used as a voter registration update form (change of name form). If the absentee voter's name on the absentee identification envelope or Secretary of State Form 11-S does not match the name in the voter's registration record, the board must reject the absentee ballot.[111]

- The absentee voter's signature must correspond with the signature that appears in the voter's registration file. If the absentee voter's signature on the absentee identification envelope or Secretary of State Form 11-S does not correspond with the signature in the voter's registration record, the board must reject the absentee ballot.

- The absentee voter must provide a form of proper identification.

    **Note:** The absentee voter is not required to provide the same form of identification they provided when registering to vote. If an identification data field in the county voter registration system (CVRS) or statewide voter registration database (SWVRD) is blank, the information contained on an absentee identification envelope, provided under penalty of falsification, may be entered into the CVRS to complete the voter's registration record both in the CVRS and SWVRD. In any instance of deficiency, the Board must carefully review its voter registration records to determine if an error on the part of the board of elections is the result of the deficiency before it ever rejects any ballot.

If the absentee voter has not provided a form of proper identification on the absentee identification envelope or Secretary of State Form 11-S, the board must reject the absentee ballot.[112]

☐ If the absentee voter has provided their name, signature, and a form of proper identification on the absentee identification envelope or Secretary of State Form 11-S, and the board can confirm the absentee voter's eligibility,[113] proceed to Step 4.

---

[111] R.C. 3509.07(B).
[112] R.C. 3509.07(F).
[113] R.C. 3509.07(A) and (C).



☐ If the absentee voter has provided their name, signature, and a form of proper identification on the absentee identification envelope or Secretary of State Form 11-S, but the board cannot determine the absentee voter's eligibility, proceed to Step 3.

## STEP 3: DETERMINE WHETHER VOLUNTARY INFORMATION PROVIDED ON THE ABSENTEE IDENTIFICATION ENVELOPE CONFIRMS THE VOTER'S ELIGIBILITY.

Only if the board of elections cannot confirm that the absentee voter was eligible to cast the ballot based on the required information the absentee voter provided, may it look at the voluntary information provided on the absentee ballot identification envelope.

1. **Residence Address**[114] - Pursuant to *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016), failure to complete the address field on an absentee identification envelope is not a reason to reject an absentee ballot.[115] If sufficient information is present for the board of elections to confirm that the voter is eligible to vote the ballot that was cast, the ballot must be counted. If the voter has a confidential voter registration record (i.e., they are a participant in the Safe at Home program), that voter need only provide their program participant identification number.

   It is important to note that the board of elections is required to pre-print the voter's address as it appears in the voter registration record onto the absentee ballot identification envelope. See, paragraph E.1. of Section 1.05, above. Occasionally, a voter may strike-through and write an address on the identification envelope that is different from the address preprinted by the board using the voter's registration record. Ohio law does not permit an absentee ballot identification envelope to be used as a voter registration update form (change of address form). If the absentee ballot identification envelope indicates that the voter's registration information is out-of-date and that the voter is required to vote a provisional ballot (i.e., the address written by the voter is outside of the precinct in which the voter is registered), the absentee ballot cannot be counted;[116]

   When reviewing addresses, remember that the U.S. Postal Service assigns a mailing address (e.g., Columbus) that is not the same as the political subdivision

---

[114] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016); R.C. 3509.06(D)(3)(a)(ii).
[115] *NEOCH v. Husted*, Case Nos. 16-3603/3691 (6th Circuit 2016).
[116] R.C. 3509.07(C).

Payne Declaration, Exh. E