**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LEAGUE OF WOMEN VOTERS OF OHIO, ET. AL.,** : | |
| : | |
| : | Case No. 20-cv-3843-MHW-KAJ |
| **Plaintiffs,** : | |
| v. : | Judge Michael Watson |
| : | |
| **FRANK LAROSE, in his official capacity** : | Magistrate Judge Kimberly Jolson |
| as Secretary of State of Ohio, : | |
| : | |
| **Defendant.** : | |
| : | |
| : | |
| : | |

**OHIO SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
EXPERT REPORTS AND TESTIMONY OF DANIEL MCCOOL, ALEXANDER
STREET, AND LINTON MOHAMMED**

Plaintiffs make too much of whether this Court should *exclude* their expert evidence as opposed to *weigh* the evidence as the factfinder.  Either way, Plaintiffs' expert evidence should be disregarded as unreliable and irrelevant to the issues presented in their Motion for Preliminary Injunction.  "[E]xpert testimony must be both relevant and reliable and . . . district courts must act as "gatekeepers" in determining the admissibility of such testimony."   *Ohio Org. Collaborative v. Husted*, No. 2:15-cv-1802, 2016 U.S. Dist. Lexis 85633, at *3 (S.D. Ohio May 24, 2016), citing *Johnson v. Maitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007).

**A. The Court should evaluate whether the experts' reports and testimony are reliable and relevant.**

Plaintiffs' argument that *Daubert* prevents this Court from evaluating their expert evidence lacks legal support.  First, contrary to Plaintiffs' assertion in their Opposition to

Defendant's Motion to Exclude Expert Reports, *Deal v. Hamilton Cty. Bd. of Educ.,* 392 F.3d 840, 851 (6th Cir.2004) does not stand for the proposition that this Court should disregard Fed.R.Evid. 702 and 703, and *Daubert*, and *Kumho*.  Previously, in *Ohio Org. Collaborative* at *6*, this Court engaged in a full analysis of the Plaintiffs' experts in the voting rights context and thoroughly addressed both *Daubert* and *Kumho*, despite the absence of any jury.  The fact that *Ohio Org. Collaborative* happened to be at the trial stage, as opposed to the preliminary injunction stage, is of no moment.  In both cases, this Court sits as the factfinder and it must determine whether the Plaintiffs' experts are reliable and relevant.  Both the district and appellate *Deal* Courts also engaged in a Rule 702 and 703 analysis, as required.  So too must this Court. *See Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-896, 2016 U.S. Dist. Lexis 35673, at *13 (S.D. Ohio Mar. 16, 2016).

Plaintiffs' next argument, that this Court should delay full analysis of Plaintiffs' expert evidence until after a preliminary injunction hearing is equally unavailing.  First, Plaintiffs offered the experts' reports as support for their request for a preliminary injunction.  But now, just 43 days before the election, Plaintiffs conveniently ask this Court to engage in some watered down assessment of their experts.  Plaintiffs offer no support for their novel theory that they may submit unreliable and irrelevant expert evidence at the preliminary-injunction stage because any challenge to it would be premature.   First, *Lumenate Techs., LP v. Baker,* No. 1:14-cv-125, 2016 WL 3906237, at *2 (S.D. Ohio July 19, 2016) is completely inapposite to the issues presented here.  In *Lumenate,* the trial court did not analyze a motion to exclude expert testimony at the preliminary-injunction stage, but rather, the court determined the admissibility of alternative theories of causation in a breach of contract action. *Id.* at *2.  In any event, the

2

Secretary has already demonstrated that Plaintiffs' expert reports *are* irrelevant, unreliable and should be disregarded as support for the Plaintiffs' Motion for Preliminary Injunction.

More importantly, Plaintiffs have not met their initial admissibility burden. Expert witnesses must show that all factual or data-based assumptions in their work are scientifically valid and accurate. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 253–54 (6th Cir. 2001) citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (upholding the exclusion of expert testimony where the expert failed to prove that his assumptions were scientifically valid). This burden is part and parcel to a Court's initial Rule 702 and 703 evaluation. Having not met their burden, Plaintiffs again rely on inapposite case law. For example, in *Benton v. Ford Motor Co.*, 492 F.Supp.2d 874, 877 (S.D. Ohio 2007), the Court analyzed whether expert testimony could be presented to a jury where there was no dispute about relevancy or reliability—defendants there disputed *only* the expert's credentials. *See* Plaintiffs' Opp. to Mot. to Exclude Experts, Doc. 49, PageID# 2499. Here, the Plaintiffs have failed to establish that their evidence is reliable and relevant. This Court should therefore disregard the Plaintiffs' expert evidence.

**B.    McCool's opinions are unreliable and irrelevant.**

McCool, with no experience in Ohio voting laws, Ohio citizens, or the United States Postal Service's functioning in Ohio, cannot opine on this litigation and this election. Plaintiffs' arguments otherwise are entirely unsupported. Conceding McCool's inexperience with Ohio, Plaintiffs rely on *Clay v. Ford Motor Co.,* 215 F.3d 663, 668 (6th Cir. 2000) for the proposition that it should not phase the Court. The *Clay* expert, an expert in the field of mechanical engineering and vehicle dynamics, was permitted to opine on products liability litigation. *Id.* at 667. Plaintiffs take every possible logical leap to apply that precedent here—where this litigation centers specifically on *Ohio* voting laws, *Ohio* voter composition, *Ohio* polling

3

locations, *Ohio* geography, *Ohio* cure periods, and *Ohio* signature matching practices. Plaintiffs' leap and the resulting logical flaw are correspondingly large.

Moreover, McCool does not utilize reliable analytical methodologies. First, McCool's qualitative method is inappropriate for this litigation. Mot. to Exclude Exp. Reports, Doc. 43, PageID# 2436. Plaintiffs have simply failed to explain his methodology other than a broad definition of "qualitative methods." Nor have Plaintiffs established that McCool's method, whatever it is, is generally accepted by peers or subject to peer review. The ultimate result is that McCool does not present his own opinion—but merely quotes others. *See* McCool Report, Doc. 24-7, PageID# 415, ¶ 34. And, whenever McCool speaks on his own, McCool advances only speculative claims about what may happen in Ohio, based on his knowledge of Native American voting in Nevada. McCool's inexperience and detachment from this litigation is plain. At every step of the Fed.R.Evid. 702 analysis, McCool fails and therefore his report must be excluded.

### C. Dr. Street's data is incomplete.

Plaintiffs agree that "Dr. Street's data set concerning absentee application rejections is incomplete." Plaintiffs' Opp. to Def's Mot. to Exclude Experts, Doc. 49, PageID# 2505. Importantly, Plaintiffs *do not* contend that Dr. Street's conclusions regarding the rate of absentee application rejections are still reliable. Nor do they claim that their data on the timing of absentee ballot application submissions is still reliable. Instead, Plaintiffs claim that the Secretary is at fault for the patchy data. Apparently, Plaintiffs urge the Court to rely on unreliable, incomplete data because that's the only data that they could provide Dr. Street. *Id.* It is important to point out that, despite believing that they had incomplete data, Plaintiffs still chose to move for a preliminary injunction instead of engaging in full discovery. Dr. Street proceeded to make unreliable conclusions with the incomplete data. The Plaintiffs' complaints

as to how they obtained the data is irrelevant. At bottom, Dr. Street's conclusions regarding the rates of absentee ballot rejections and the timing of absentee ballot application submissions are simply unreliable and therefore they are irrelevant to the issues presented here.

      **D.     Dr. Mohammed's report is irrelevant.**

Plaintiffs fail to show the relevancy of Dr. Mohammed's report. Dr. Mohammed's report suffers the same deficiency as Dr. Street's Bayesian analysis – both are based the inaccurate assumption that Ohio elections officials commit frequent errors in evaluating whether a signature on an absentee ballot application is *genuine*. *See* Mot. to Exclude Exp. Reports, Doc. 43, PageID# 2440, 2444. Plaintiffs do not dispute the inaccuracy of the assumption. They simply claim, without one shred of evidence, that Dr. Mohammed's conclusions "shed light on why elections officials are likely to make mistakes" and also support "Plaintiffs' claim that counties apply inconsistent standards for signature matching." *Id.* at PageID# 2507. Not true. Again, Ohio elections officials reject absentee ballot applications because the signature on the application does not match the voter's signature on file with the board of elections. There is no determination of the *genuineness* of the signature on the application. Indeed, every voter whose application is rejected for a signature mismatch has the same opportunity to cure the mismatch. And, of course, Ohio permits liberal curing of signature mismatches. Dr. Mohammed's report appears to bear on the issue of Ohio's genuine interest in signature matching given the allegedly high error rates. But Plaintiffs concede that Ohio's interest in the practice of signature matching is not at issue at the preliminary-injunction stage. Accordingly, Dr. Mohammed's report on why or how elections officials make mistakes on signature matching is simply irrelevant to the very narrow issues presented here. Plaintiffs offer no evidence to the contrary.

5

For the foregoing reasons, Ohio Secretary of State Frank LaRose respectfully requests this Court to disregard the expert reports and testimony of Dr. McCool, Dr. Street and Dr. Mohammed as unreliable and irrelevant to the issues presented in this case.

Respectfully submitted,

DAVE YOST
Ohio Attorney General


*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
*Counsel of Record*
LIDIA MOWAD (0097973)
ANN YACKSHAW (0090623)
BRANDI SESKES (0077648)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Julie.Pfeiffer@ohioattorneygeneral.gov
Lidia.Mowad@ohioattorneygeneral.gov
Ann.Yackshaw@ohioattorneygeneral.gov
Brandi.Seskes@ohioattorneygeneral.gov

*Counsel for Defendant Ohio Secretary of State Frank LaRose*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

*/s/Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*

6